Richard A. T. TAM, Romeo Mindo, Frances McCallum, Hajime Tsuda, Lucille Toyama, Teodorico Reyes, Laura Ching, Tiofelo Rofoli, Kathy Roque, Reuben Aea, Michael Akamine, John Caudillo and Melvin Nakaima, Plaintiffs,

v.

Arthur A. RUTLEDGE, Anthony Rutledge, Sally Gomes, Rita Kubota, Lois Reeves, Hotel and Restaurant Employees and Bartenders Union Local 5, and Hotel & Restaurant Employees and Bartenders International Union, Defendants.

Civ. No. 78–0315.

United States District Court,
D. Hawaii.

Aug. 20, 1979.

Arthur Y. Park, Sean Kim, Gill, Park & Park, Honolulu, Hawaii, for plaintiffs.

William A. Sokol, Van Bourg, Allen, Weinberg, Williams & Roger, San Francisco, Cal., John R. Desha, II, Honolulu, Hawaii, for defendants Arthur A. Rutledge, Anthony Rutledge, Sally Gomes, Rita Kubota, Lois Reeves, and Hotel and Restaurant Employees and Bartenders Union Local 5.

Albert Brundage, Brundage, Davis, Frommer & Jesinger, San Francisco, Cal., for defendant Hotel & Restaurant Employees and Bartenders International Union.

## DECISION ON COUNT ONE

SAMUEL P. KING, Chief Judge.

### SUMMARY

The imposition and continuance of a trusteeship on Hotel and Restaurant Employees and Bartenders Union Local 5 (Local 5), by the Hotel & Restaurant Employees and Bartenders International Union (International Union or International) is attacked by certain members of Local 5.[1]

Plaintiffs raise several questions regarding the trusteeship.[2] First, plaintiffs contend that a trusteeship may not be imposed without a prior fair hearing. Second, plaintiffs contend that this trusteeship was not established for an allowable purpose. Third, plaintiffs contend that this trusteeship was not established in good faith. Fourth, plaintiffs contend that the post-imposition hearing held by the International was not a fair hearing. Fifth, plaintiffs contend that the relevant credible evidence adduced at the hearing did not substantiate any of the charges made. Sixth, plaintiffs contend that this trusteeship is not being maintained in good faith.

Another issue not raised by plaintiffs but which I raise *sua sponte* is: Seventh, whether the imposition of a trusteeship ousts the Secretary of Labor of jurisdiction to conduct a supervised election in a pending civil action.

I conclude that a trusteeship may be imposed without a prior hearing, that this trusteeship was established for an allowable purpose and in good faith, that the post-imposition hearing was a fair hearing, that the relevant credible evidence adduced at the hearing did substantiate most of the charges made, that the trusteeship is being maintained in good faith, and that a trusteeship does not oust the Secretary of Labor of jurisdiction to conduct a supervised election in a pending civil action.

### FINDINGS AND CONCLUSIONS

The governing principles of law in this matter are derived from the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. Chapter 11.

1. The official name of the International Union according to its Constitution is "Hotel & Restaurant Employees and Bartenders International Union." The official name of Local 5 according to its Bylaws is "Hotel and Restaurant Employees and Bartenders Union Local 5."

2. The original complaint, filed on August 22, 1978, sought installation of certain plaintiffs as allegedly duly elected officers of the local union. Their right to office is alleged to have resulted from an unsupervised election held May 31, 1978, through June 30, 1978. A motion for preliminary injunction was set for hearing on August 31, 1978.
Before that date and on August 28, 1978, the International imposed the trusteeship in question. Plaintiffs were aware that a trusteeship was brewing, so their original complaint had the two-fold purpose of getting the "new" officers installed and of preventing the imposition or continuance of an international trusteeship. After the trusteeship was imposed, an amended complaint was filed on September 13, 1978. Various motions were disposed of by decision filed October 17, 1978, covering three pending cases (Civil No. 78–0095, Civil No. 78–0191, and Civil No. 78–0315) arising out of the interaction of competing forces in Local 5. The

result of this earlier decision was essentially to leave the instant case in a posture for trial. Trial was held in February and March 1979. On March 19, 1979, I entered a decision and order on motions for dismissals granting motions to dismiss as to all defendants with respect to Counts Two, Three, and Four of the amended complaint, and as to all defendants except the International Union with respect to Count One. Trial on Count One as to the International Union was completed on March 27, 1979, and post-trial memoranda filed on April 16 and 17, 1979.
Plaintiffs do not contend that the trusteeship has not been established and administered in accordance with the constitution and bylaws of the International Union. Plaintiffs' right to sue is conceded. Section 304(a) of the LMRDA, 29 U.S.C. § 464(a), specifically provides: "Any member or subordinate body of a labor organization affected by any violation of this subchapter (except section 461 of this title) may bring a civil action in any district court of the United States having jurisdiction of the labor organization for such relief (including injunctions) as may be appropriate."

Section 302 of the Act, 29 U.S.C. § 462, provides:

> Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization.

Section 304(c) of the Act, 29 U.S.C. § 464(c),[3] provides:

> In any proceeding pursuant to this section a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing either before the executive board or before such other body as may be provided in accordance with its constitution or bylaws shall be presumed valid for a period of eighteen months from the date of its establishment and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 462 of this title. After the expiration of eighteen months the trusteeship shall be presumed invalid in any such proceeding and its discontinuance shall be decreed unless the labor organization shall show by clear and convincing proof that the continuation of the trusteeship is necessary for a

purpose allowable under section 462 of this title. In the latter event the court may dismiss the complaint or retain jurisdiction of the cause on such conditions and for such period as it deems appropriate.

These statutory provisions do not require a fair hearing before imposition of a trusteeship over a local union by an international union.[4] They do require a fair hearing either before or after imposition of a trusteeship. While the present language of the quoted statutes logically does not require any hearing at all but only provides that, if a fair hearing is held, the trusteeship shall enjoy a presumption of validity for eighteen months that cannot be overcome except by clear and convincing proof, the legislative history and general purposes of the LMRDA indicate that Congress intended a requirement of a fair hearing to authorize or ratify the imposition of a trusteeship. The LMRDA allows for the possibility of post hoc ratification as well as prior approval so long as the post hoc ratification is provided for in the union's constitution or bylaws and the hearing follows with reasonable promptness. *National Association of Letter Carriers v. Sombrotto,* 449 F.2d 915 (2d Cir. 1971); *Jolly v. Gorman,* 428 F.2d 960 (5th Cir. 1970), cert. denied, 400 U.S. 1023, 91 S.Ct. 588, 27 L.Ed.2d 635 (1971); *Plentty v. Laborers' International Union of No. America,* 302 F.Supp. 332 (E.D.Pa.1969); *but cf. International Brotherhood of Electrical Workers Local 1186 v. Eli,* 307 F.Supp. 495 (D.Hawaii 1969) (fair hearing requirement only goes to presumption of validity of trusteeship and is not a requirement of a valid trusteeship in the first instance). *See Local U. 13410, United Mine Workers v. United Mine Work-*

---

**3.** LMRDA Section 304(a), 29 U.S.C. § 464(a), authorizes a civil action by the Secretary of Labor or by any member or subordinate body affected.

**4.** The constitution and bylaws of a labor organization may require a prior hearing or some other pre-imposition procedure. Such procedures must be followed if the trusteeship is to be established "only in accordance with the constitution and bylaws of the organization" imposing the trusteeship. *Cf. United Bro. of Carpenters & Joiners of America v. Brown,* 343

F.2d 872 (10th Cir. 1965) (trusteeship not authorized by constitution of international and not imposed for allowable purpose); *Local U. 13410, United Mine Workers v. United Mine Workers,* 154 U.S.App.D.C. 322, 475 F.2d 906 (1973) (all practical steps must be taken to afford a hearing before a trusteeship is imposed); *Bailey v. Dixon,* 429 F.2d 1321 (5th Cir. 1970) (a district judge has discretion to decide whether a hearing should precede or follow the trusteeship).

ers, 154 U.S.App.D.C. 322, 329–331, 475 F.2d 906, 913–915 (1973). Cf. Bailey v. Dixon, 429 F.2d 1321 (5th Cir. 1970) (preliminary injunction against trusteeship issued before post hoc hearing could be held); Local No. 2, Int. Bro. of Tel. W. v. International Bro. of Tel. W., 261 F.Supp. 433 (D.Mass.1966) (no fair hearing held, and procedures not specified in constitution or bylaws); Flight Engineers Inter. Ass'n v. Continental Air Lines, Inc., 297 F.2d 397 (9th Cir. 1961) (international union cannot impose trusteeship on local union where there is no provision therefor in the constitution or bylaws of the international).

The Constitution of the International Union, effective July 26, 1976, contains a separate Article VI of 9 sections on Trusteeship.[5] The sections of specific application to this case are Sections 1, 2, and 3. These

---

5. These provisions read as follows:

ARTICLE VI—TRUSTEESHIP

Section 1. Authority of the General President.

(a) Whenever, in the opinion of the General President, a Local Union, Joint Council, Joint Board, State Council, or any of its officers has been guilty of violating the terms of this Constitution, or a lawful order of the General Executive Board, the Convention body, or the General President, or whenever any such subordinate body of the International, or its officers, in the opinion of the General President, conducts the affairs of such organization contrary to the interests of such organization or the International Union, so as to constitute a threat to the welfare of any of the said organizations, or in a grossly incompetent manner, or where an emergency exists, or when in the opinion of the General President, a trusteeship is necessary for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out legitimate objects, the General President may order a Trustee to take charge and control of the affairs and property of such Local Union, Joint Council, Joint Board or State Council.

(b) The General President shall instruct the General Secretary-Treasurer to prepare a notice of charges setting forth the reasons for the trusteeship, which notice of charges shall be served upon the subordinate body, through any of its officers, prior to or simultaneously with the establishment of the trusteeship.

Section 2. Appointment of Trustee Before Hearing. When, in the opinion of the General President, delay would be contrary to the best interests of the subordinate body or International Union, a Trustee may, pursuant to order of the General President, temporarily take charge and control of the affairs and property of such subordinate body, with all the powers set forth in Section 5 of this Article, prior to a hearing but after or simultaneously with service of such notice of charges.

Section 3. Hearing on Trusteeship. The General President may order a hearing on the institution of any trusteeship. Within ten (10) days after the service of notice of charges, or appointment of Trustee without hearing, whichever is later, any three officers or suspended or temporary officers of the Local Union if the trusteeship has already been instituted, or twenty-five members of the Local Union, may apply to the General President for a hearing. Such hearing shall determine whether such trusteeship shall be instituted or continue, as the case may be. The persons making such application may, if they desire, request an oral hearing on such application by stating their reasons for such hearing and summarizing in writing the evidence which they intend to produce. If the General President deems that the reasons advanced, together with the evidence to be offered warrant the same, he shall appoint a member of the International Union to conduct such hearing and make a report to the General President with respect to the institution or dissolution of the trusteeship, as the case may be. If no oral hearing is granted, the interested parties shall submit in writing such evidence as they have within the time limits set by the General President. The General President shall, after considering the oral or written evidence, render his decision in the matter. The decision of the General President shall be appealable to the General Executive Board.

Section 4. When Hearing is Unnecessary. If the membership of the Local Union, at a regular or special meeting, consents to the trusteeship by a majority vote of those voting, or if no hearing of the trusteeship is requested within the time limits set forth in Section 3 of this Article, the General President may dispense with the hearing. If application for hearing has been filed, such vote of the membership may be held at any time prior to the commencement of the hearing, and if by a majority vote of those voting there is consent to the trusteeship, the General President may dispense with the hearing.

Section 5. Powers of Trustee. The Trustee shall be appointed by the General President. His letters of appointment shall be honored and complied with by the affected officers and members. He shall have full authority to conduct all the affairs of the Local Union or other subordinate body, to suspend all officers, to suspend by-laws, to appoint temporary officers and employees, collect dues, pay bills; he may suspend or convene meetings, whose purposes shall be limited to those set forth by the Trus-

sections provide in relevant part, that, when any of the conditions specified in Section 1(a) exist,[6] the General President may order a Trustee to take charge and control of the affairs and property of a local union. In doing so, the General President shall in-

tee and he may enter into agreements in the organization's name. All books, records, monies, property, and premises belonging to or controlled by the organization shall be turned over to him upon his demand and he shall issue a receipt for the same. The Trustee shall carry out all orders issued to him by the General President. The Trustee shall give bond for the faithful discharge of his duties in an amount determined by the General President. He shall make monthly reports to the General President, including statements of receipts and expenditures and detailing the action taken by him as Trustee.

Section 6. Duration of Trusteeship. A trusteeship shall not extend beyond eighteen (18) months unless the General Executive Board approves the extension. The General President shall terminate all trusteeships as soon as, in his opinion, the local conditions warrant such termination.

Section 7. Procedure Upon Termination of Trusteeship.

(a) When a trusteeship is to be terminated, the Trustee shall prepare by-laws, which after approval by the General President, shall be promulgated as the by-laws of the Local Union prior to the acceptance of nominations immediately before the end of the trusteeship. Such by-laws shall provide the nomination and election procedure to be followed as a part of the trusteeship termination and shall also provide for future nominations and elections. The said by-laws promulgated by the Trustee with the approval of the General President, shall remain in effect until such time as the Local, under the procedure of this Constitution, amends the same or adopts new by-laws.

(b) When a trusteeship is to be terminated, the Trustee shall call meetings for the purpose of receiving nominations for officers and conducting elections. He shall install such officers on the day the trusteeship is to be terminated. All properties under the trusteeship shall be turned over to the proper local officers, who shall receipt for the same. A final audit of the trusteeship shall be made and approved by the General Secretary-Treasurer.

(c) Notwithstanding anything contained in Section 7(a) & (b) to the contrary, and in lieu of such procedure, the General President with the approval of the General Executive Board may merge such Local Union with another Local Union or Unions in the same manner as provided in Article V, Section 16, if in his opinion such merger would serve the best interests of the Local Union and its membership.

struct the General Secretary-Treasurer to prepare a notice of charges setting forth the reasons for the trusteeship, which notice of charges shall be served upon the local union, through any of its officers, prior to or simultaneously with the establishment of

Section 8. Administrative Assistance to a Newly Chartered Local. Whenever the International Union engages in an organizing drive in a newly chartered Local Union, or when any Local Union requests administrative assistance for any purpose, the General President shall have the right to provide administrative assistance for any such Local. Where the General President provides such administrative assistance he shall have the authority, as the duly authorized agent of such Local Union, to appoint and remove any officer of such Local Union, and all formal actions of such Local Union shall be subject to his approval. Financial assistance rendered to such Local by the International Union shall be carried on the books of such Local Union as a loan from the International Union, unless otherwise directed by the General Executive Board. Such Local Union shall enter into all contracts and financial transactions in its own name and may not obligate the International Union in any way whatsoever without specific authorization from the General Executive Board. Every action of the General President or his representative in connection with such Local shall be as an agent of the Local Union, pursuant to the authority herein stated and not as an agent of the International Union.

Section 9. Termination of Administration. Local Unions or membership which are receiving administrative assistance as provided for in the next preceding Section shall retain that status until the General Executive Board determines that stability among such members or Locals has been reached to warrant the termination of administrative assistance; provided, however, that whenever one-third (⅓) of the membership involved requests termination of such administrative assistance, and all financial obligations to the International Union have been discharged by such Local Union, the General President shall conduct an investigation of the request and report on the same to the General Executive Board, which shall then reach a decision on such request.

6. See note 5, supra. It is understood that the specified situations are subject to any limitation imposed by LMRDA Section 302, 29 U.S.C. § 462. See Benda v. Grand Lodge of Intern. Ass'n of Machinists, 584 F.2d 308 (9th Cir. 1978); cf. Retail Clerks U. Loc. 770 v. Retail Clerks Internat'l Ass'n, 479 F.2d 54 (9th Cir. 1973) (no showing of emergency requiring prehearing imposition of trusteeship).

the trusteeship. When, in the opinion of the General President, delay would be contrary to the best interests of the local union or of the International Union, a Trustee may be ordered to temporarily take charge and control of the affairs and property of the local union prior to a hearing but after or simultaneously with service of the notice of charges. After the service of notice of charges, or appointment of Trustee without hearing, whichever is later, a hearing shall be held to determine whether the trusteeship shall be instituted or continued.[7] The General President shall appoint a member of the International Union to conduct the hearing and make a report to the General President with respect to the institution or dissolution of the trusteeship. The General President shall render his decision in the matter after considering the oral or written evidence presented. His decision is appealable to the General Executive Board.

The written record on this trusteeship begins with a letter dated August 18, 1978, to General President Edward Hanley, from five members of the executive board,[8] requesting that the International Union immediately order a Trustee to take charge and control of the affairs and property of Local 5 in accord with Article VI of the Constitution of the International Union. The letter states that "an emergency exists" and that "a trusteeship is necessary to restore democratic procedures to Local 5." [9]

7. Article VI Section 3 actually only provides for an oral hearing upon application within ten days by three officers or twenty-five members of the local union, and then only if the General President deems that the reasons advanced and evidence to be offered warrant an oral hearing, and Article VI Section 4 provides for situations in which a hearing is unnecessary. See note 5, supra. For the reasons set forth in the body of this decision, a trusteeship is not valid unless authorized or ratified after a fair hearing, held with reasonable promptness if post hoc, and therefore these provisions of Article VI must be considered inoperative. In this case, an oral hearing was ordered, held, and transcribed, without any application therefor by any officers or members of the local union.

8. Arthur Rutledge, Anthony Rutledge, Lois C. Reeves, Sally Gomes, and Rita D. Kubota. Plaintiff Richard A. T. Tam was a member of the Executive Board by virtue of his office as Secretary-Treasurer. He did not join in this request for a trusteeship.

9. The letter proceeds:
The nature of the emergency is as follows:
1. An election of Union officers for Local 5 was scheduled for November 17, 1977, in accord with Federal Law and in accord with the Constitution and Bylaws of the Union. This election has not been held.
2. An attempted election was held in May–June, 1978, in which Secretary-Treasurer Richard Tam was a candidate for President, running against Vice-President Anthony Rutledge. This attempted election has been treated as null and void due to numerous irregularities and improprieties, and after the United States Department of Labor filed a Complaint in Federal Court, Local 5 entered into a Stipulation, and a Court Order followed on June 30, 1978, directing that an election be held under the supervision of the Department of Labor.
3. Since March, 1978, there has been complete turmoil and disruption within Local 5, caused by its officers running against one another for election to Union office. Numerous charges have been made concerning financial mismanagement, failure to sign certain documents, and the ineligibility of certain candidates, and many of these charges have been printed in local newspapers and broadcast on television and radio, contrary to the interest of Local 5 and contrary to the interest of the International Union.
4. As a result of incumbent officers running against one another for election to Union offices, and making such serious charges against one another, and as a result of their inability to work together and/or their unwillingness to work together, there have been repeated problems and great difficulties encountered in accomplishing the daily business and proper duties and responsibilities of Local 5.
5. As a result of the turmoil and confusion created in Local 5 by the charges and counter-charges of various candidates and potential candidates, the Department of Labor filed an Application for Adjudication in Civil Contempt against Local 5 on August 4, 1978, asking the Court to find Local 5 in Contempt of Court for delaying and obstructing the federally supervised election of Union officers. Local 5 filed a Cross-Application for Adjudication in Civil Contempt against the Department of Labor, asking the Court to find the Department of Labor in Contempt of Court for violating the Court Order in the manner in which it tried to take over Local 5.
6. In the trial in the Federal District Court for the District of Hawaii, before the

On August 23, 1978, General Secretary-Treasurer John Gibson of the International Union wrote to "Sisters and Brothers" of Local 5, copies to Herman Leavitt, Administrative Assistant to the General President, and Arthur Rutledge, President of Local 5, and Richard Tam, Secretary-Treasurer of Local 5, setting forth "Notice of Charges" in accordance with Article VI Section 1(b) of the Constitution of the International Union. The letter states that Mr. Gibson is writing pursuant to instructions from the General President, that in the opinion of the General President an emergency exists, a trusteeship is necessary, any delay would be detrimental to the best interests of the local and of the international, and a Trustee should immediately take charge and control of the affairs and property of Local 5 simultaneously with service of "this Notice of Charges." [10]

> Respectfully and fraternally yours,
> /s/ John Gibson
> JOHN GIBSON
> General Secretary-Treasurer

Honorable Judge Samuel P. King, on the Cross-Applications for Civil Contempt, evidence was introduced on August 16, 1978, showing the members of the faction supporting candidate Richard Tam have been tape recording Local 5 meetings and turning these tapes over to the United States Department of Labor, and in addition, evidence was introduced showing these same members submitted numerous affidavits to the Department of Labor concerning the internal affairs of Local 5.

7. In the same trial on August 16, 1978, after listening to one full day of testimony, the Honorable Judge Samuel P. King stated, "You don't have a Union here. You have a war." Judge King went on to say that it looked like a war to him because Union members were spying on each other, secretly tape-recording each other, and making out affidavits about one another. Judge King also suggested that it seemed to him to be an ideal situation in which an International Union might well choose to put a Local Union in trusteeship.

8. Presently there is no election scheduled for Union officers in Local 5. The schedule proposed by the Department of Labor in the Stipulation signed June 30, 1978, called for an election by October 3, 1978. However, Judge King has already suggested that this schedule is no longer practicable or possible and the attorney for the Department of Labor agrees with this.

The present emergency in Local 5 has been caused primarily by the inability of Local 5 to conduct a timely election of Union officers. This lack of an election and the serious charges made against one another by the candidates has created further turmoil and confusion in Local 5 which has made it difficult for Local 5 to fulfill many of its other duties and responsibilities, besides simply having an election.

For all the above reasons, we, the undersigned, members of the Executive Board of Local 5, hereby officially request that a Trustee be appointed in accord with Article VI of the International Constitution to step into this emergency situation and take charge and control of the affairs and property of Local 5, to restore democratic procedure and conduct its affairs in a manner not contrary to the interests of Local 5 and the International Union.

10. The letter reads as follows:

Dear Sisters and Brothers:

*Re: Notice of Charges*

In accordance with Article VI, Section 1 of the International Constitution, the General President has instructed the undersigned to prepare a Notice of Charges, setting forth the reasons necessitating the appointment of a Trustee over Hotel, Restaurant Employees and Bartenders Union Local 5, Honolulu, Hawaii. Accordingly, you are hereby notified of the following charges which necessitate the appointment of a Trustee:

1. The majority of the Executive Board of Local 5 has requested a trusteeship, per letter dated August 18, 1978.

2. An election of officers should have been held in November, 1977, in accordance with the bylaws of Local 5, however, this election was not held.

3. Because of the subsequent confusion resulting in lawsuits involving the officers of Local 5 and the U.S. Department of Labor, Local 5 has almost become functionally inoperative.

4. Extreme confusion also exists because this International Union has been advised that the duly elected Secretary-Treasurer as of November, 1977, has allegedly been removed from that position by action of the other officers of Local 5 and it is the Secretary-Treasurer who bears the individual primary responsibility for the conduct of the election of officers for that local union.

5. A review of the Audit Reports for Local 5 indicates that a clarification of the assets and liabilities of the funds of Local 5 is also a matter which should be attended to in order to protect and identify these assets in behalf of the membership of Local 5.

While I have never been entirely clear as to how much communication there had been between the faction represented by the plaintiffs (sometimes referred to as the Tam forces) and the faction represented by the individual defendants (sometimes referred to as the Rutledge forces) and the officers of the International Union, either directly or through counsel, plaintiffs knew that the International Union was considering imposing a trusteeship. The original complaint in this action was filed at 10:00 AM on August 22, 1978, from which I infer that counsel for Mr. Tam was aware that the General President had instructed the General Secretary-Treasurer to proceed with a Notice of Charges.

Prior to this letter and during a hearing before me on August 16, 1978, in another action,[11] it was represented in court that a representative of the International Union had been discussing with Plaintiff Tam and Tam's attorney and others whether there could be general agreement at the local level that a trusteeship be imposed, but no agreement had been reached.

Herman Leavitt, an international vice-president, came to Hawaii in July, at the direction of General President Hanley, for the purpose of mediating the conflicts between the Rutledge forces and the Tam forces. He was instructed to make an investigation of the situation with regard to Local 5. He met with Plaintiff Tam, with Defendants Arthur Rutledge and Anthony Rutledge, with other members of the executive board, with other union members, and with the local Labor Department representative. He found the opposing forces to be inflexible. He came to the conclusion that Arthur Rutledge and Richard Tam were bent on destroying each other. He finally recommended to General President Hanley that a trusteeship be imposed. The charges set forth in Mr. John Gibson's letter of August 23, 1978, were based on Mr. Leavitt's July investigation.

The conflicts that led to Mr. Leavitt's investigation became apparent in December 1977. To comply with the requirement of LMRDA Section 401(b), 29 U.S.C. § 481(b),[12] an election for officers should have been held in November 1977. None was held. It was obvious that elections were going to be held voluntarily or would be ordered involuntarily. In this climate, and with indications that elections would be held, and about December 13, 1977, Plaintiff Tam publicly announced his intention to be a candidate for president of Local 5. A Rutledge group and slate of officers and a Tam group and slate of officers surfaced. Charges and countercharges were publicized, some of a personal nature and some implying malfeasance and misfeasance in office.[13] A detailed history of the legal

By reason of all of the foregoing, it is the opinion of the General President, that the local union and its officers have been guilty of violating the terms of the Constitution, have been conducting the affairs of the union contrary to the interests of said union and the International Union so as to constitute a threat to the welfare of the members and therefore, an emergency situation exists. The General President is also of the opinion that a trusteeship is necessary for the purpose of restoring democratic procedures, assuring the performance of collective bargaining agreements, carrying on the legitimate objectives of the local union and the International Union and assuring compliance with the International Constitution and applicable federal law.

It is also the opinion of the General President that any delay would be detrimental to the best interests of Local 5 and the International Union and that therefore, a Trustee should immediately take charge and control of the affairs and property of Local 5 with all the powers set forth in the International Constitution, simultaneously with service of this Notice of Charges.

We shall appreciate the cooperation of all officers and members of Local 5 so that the trusteeship may be terminated at the earliest possible moment.

11. Civil No. 78–0191. This is an action by the Secretary of Labor against Local 5 to secure a supervised election. The specific hearing involved cross-motions for contempt of an earlier court order for a supervised election.

12. This subsection provides: "Every local labor organization shall elect its officers not less often than once every three years by secret ballot among the members in good standing."

13. Mr. Leavitt as part of his July investigation mailed copies of the newspaper stories on these

actions that followed is set forth in my Decision filed October 17, 1978, in this action and the two other actions then pending.[14]

General President Hanley, in directing the imposition of a trusteeship on Local 5, decided that delay would be detrimental to the best interests of Local 5 and of the International Union and therefore that a Trustee should take charge and control of the affairs and property of Local 5 simultaneously with service of the Notice of Charges of August 23, 1978. International Vice-President Herman Leavitt was appointed Trustee of Local 5 by letter dated August 23, 1978, from General President Hanley. Mr. Leavitt served copies of the Notice of Charges on Arthur Rutledge and Richard Tam on August 28, 1978, and immediately took charge of the local.

The procedure followed was strictly in accordance with the provisions of the International Constitution. Yet I would agree that something more must be shown. The teaching of the cases cited above is that there must be a showing of good faith on the part of the international, of some reasonable basis to believe that the action taken was justified. Otherwise an international union could impose a trusteeship upon a subordinate body without any provocation at all, and then look around for some basis upon which to support its action.

■ The record amply supports the action of the International Union in this case. I find that the charges listed in the Notice of Charges were set forth in good faith based upon International Vice-President Leavitt's July investigation, that General

President Hanley acted in good faith in imposing a trusteeship based upon the report of International Vice-President Leavitt and upon the earlier exchanges of correspondence regarding the holding of elections for officers of Local 5, and that General President Hanley had a reasonable basis for his opinion that delay would be contrary to the best interests of Local 5 and of the International Union based upon the proliferation of legal actions and of public charges and countercharges and of the failure of attempts at reconciliation and mediation or to hold a supervised election.[15]

As stated above, if a hearing is not held before the imposition of a trusteeship, a hearing must be held within a reasonable time after the imposition of a trusteeship. By letters dated September 12, 1978, General President Hanley ordered a series of oral hearings "to determine whether such trusteeship shall continue." International Vice President Joseph Belardi was appointed as hearing officer. International Vice President John C. Kenneally was requested to present all evidence in support of the charges. The hearings were set for October 3, 4, and 5, 1978, from 10:00 a. m. to 12:00 noon, 1:00 p. m. to 4:00 p. m., and 6:30 p. m. to 9:00 p. m., on each day, at Unity House, 460 Ena Road, Honolulu, Hawaii, in the second floor meeting room. This scheduling was designed to give all members of Local 5 an opportunity to participate. Additional sessions could be requested. The charges set forth in the Notice of Charges were repeated in General President Hanley's letter to the members of Local 5.

The letter appointing International Vice President John C. Kenneally to handle the

charges and countercharges to General President Hanley.

**14.** Civil No. 78–0095 and Civil No. 78–0191. General President Hanley was formally notified by Plaintiff Tam on January 5, 1978, of the failure to hold elections. General President Hanley, by letter dated January 18, 1978, directed that nominations for Local 5 offices be effected in February 1978 and elections held in March 1978. The nominations were effected but the elections were aborted.

**15.** In Civil No. 78–0191, the action by the Secretary of Labor against Local 5, an impasse had

been reached with an order to show cause sought by the Secretary of Labor as to why Local 5 should not be found in contempt of court and a counter order to show cause sought by Local 5 as to why the Secretary of Labor should not be found in contempt of court. An ordered supervised election had been aborted, allegedly due to stalling tactics by Arthur Rutledge, although he charged that the Secretary's local representative had set an unrealistic time schedule which was also not in accord with the local's constitution and by-laws.

presentation of evidence in support of charges went out over the signature of General Secretary-Treasurer John Gibson on September 12, 1978.

Hearing Officer Joseph Belardi convened the first session as scheduled. He suggested that those objecting to the trusteeship appoint a spokesman to handle cross-examination. Plaintiff Tam was designated to represent the opposition. The matter was left open for possible designation of others also. At the evening session on the first day, Defendant Arthur Rutledge was allowed to cross-examine as representative of a competing group.

The hearing ran its course and has been fully transcribed.[16] Plaintiffs attack the hearing on several grounds. Their principal point is that those opposing the trusteeship were denied effective cross-examination of key witnesses (generally the individual defendants) upon whose testimony the hearing officer and other International Union officials relied in justifying the trusteeship. They also allege that Hearing Officer Joseph Belardi was biased in favor of the trusteeship, and argue (or did argue at one time) that lack of compulsory process to obtain the presence of witnesses, and refusal to allow attorneys for the opposition to participate, denied plaintiffs the fair hearing provided by statute.

A fair hearing under Section 304(c) of the LMRDA, 29 U.S.C. § 464(c), implies at least the procedural requirements of notice of the charges and of the date and nature of the hearing, presentation of evidence and witnesses in support of the reasons for imposing the trusteeship with the opportunity for cross-examination, and the opportunity to present evidence in rebuttal. *Jolly v. Gorman,* 428 F.2d 960, 967–8 (5th Cir. 1970), *cert. denied,* 400 U.S. 1023, 91 S.Ct. 588 (1971); *Plentty v. Laborers' International Union of No. America,* 302 F.Supp. 332 (E.D.Pa.1969). It is not a function of the notice requirement to raise fair hearings to the level of judicial proceedings and to impose rigid forms of pleading, but especially when the hearing takes place after the trusteeship is imposed, the local is entitled to be informed in written charges of the acts which the international asserts invoke the right to impose a trusteeship, and a reasonable opportunity to prepare its defenses. The ultimate issue considered must be ratification of the trusteeship. *Luggage Wkrs. U., Local 167 v. International L. G., P. & N. W. U.,* 316 F.Supp. 500 (D.Del.1970). The test of the adequacy of a fair hearing is not whether it meets the requirements of an error free judicial trial but whether it was conducted in· reasonable good faith as an approximate effort to achieve its objective. *Schonfeld v. Raftery,* 271 F.Supp. 128 (S.D. N.Y.1967), *aff'd,* 381 F.2d 446 (2d Cir. 1967). The fact that the local was not allowed to have counsel present does not deprive the local of a fair hearing. *International Bro. of Elec. Wkrs., Local 1186 v. Eli,* 307 F.Supp. 495–510 (D.Hawaii 1969).

Applying these authorities to the hearing held, I find that the requirements of procedural due process were met. While some of the witnesses called by International Vice President John C. Kenneally refused to be cross-examined at first, they were later recalled and cross-examined at length.[17] Although counsel were not per-

---

**16.** The transcript is in three volumes totaling 689 pages. Numerous exhibits were introduced by Mr. Kenneally and some additional exhibits by others.

**17.** Arthur Rutledge was called by the International Union as a witness and examined by Mr. Kenneally. Tr. (I) 98–106, 146–149. He was cross-examined by Mr. Tam. Tr. (I) 106–128, 131–146, 149–165. At the night session on October 3, 1978, Mr. Tam had further questions of Arthur Rutledge. By this time, however, Arthur Rutledge had taken the position that he would not answer any further questions put by Mr. Tam unless Mr. Tam agreed to testify and to be cross-examined by Arthur Rutledge. This Mr. Tam refused to do. Therefore, Arthur Rutledge refused to subject himself to further cross-examination by Mr. Tam. Tr. (I) 170–176, 184–192.

Anthony Rutledge was not called by the International Union but appeared voluntarily and made a long statement in support of the trusteeship. Tr. (II) 58–73. Mr. Tam then attempted to cross-examine Anthony Rutledge who refused to answer any questions put to him by Mr. Tam unless Mr. Tam would testify and

mitted to appear on the record, attorneys for plaintiffs and defendants were present and the hearing officer allowed recesses whenever requested so that Plaintiff Tam could consult with his attorneys. From the transcript of the hearing, one can infer that many of Plaintiff Tam's questions on cross-examination were suggested to him by his attorneys. Adequate specific notice of charges was given sufficiently in advance of the hearing. Hearing Officer Joseph Belardi was fair to all parties. No witnesses were excluded.

■ Aside from procedural due process, the fair hearing required under Section 304(c) of the LMRDA, 29 U.S.C. § 464(c), must meet certain requirements of the LMRDA and of substantive due process. The hearing must be on the relevant charges of which notice has been given and not some other charges. The only relevant charges are those which if established, support one or more of the purposes for a trusteeship allowed under Section 302 of the LMRDA, 29 U.S.C. § 462. Where the hearing comes after the trusteeship, these must be the same charges that led to the prior imposition. If the trusteeship is ratified, there must be substantial credible evidence to sustain one or more of the relevant charges. *See Jolly v. Gorman,* 428 F.2d 960 (5th Cir. 1970), *cert. denied,* 400 U.S. 1023,

91 S.Ct. 588 (1971); *Bailey v. Dixon,* 314 F.Supp. 452 (E.D.La.1970), *aff'd,* 451 F.2d 160 (5th Cir. 1971), *cert. denied,* 406 U.S. 945, 92 S.Ct. 2043, 32 L.Ed.2d 332 (1972); *Atlanta F. and C. Serv. Emp. Loc. Un. 554 v. Service Emp. Int. Un.,* 327 F.Supp. 644 (N.D.Ga.1970), *aff'd,* 441 F.2d 1115 (5th Cir. 1971); *Schonfeld v. Raftery,* 271 F.Supp. 128 (S.D.N.Y.1967), *aff'd,* 381 F.2d 446 (2d Cir. 1967); *Brotherhood of Painters v. Brotherhood of Painters, L. U. 127,* 264 F.Supp. 301 (N.D.Ca.1966).

At the conclusion of the hearing, Hearing Officer Joseph Belardi reported to General President Hanley. By letter dated December 20, 1978, General President Hanley informed Local 5 that he had reviewed the record of the hearing and determined that the trusteeship should be ratified and continued. He set forth in detail his analysis and findings of the evidence relating to each of the five charges set forth in General Secretary-Treasurer Gibson's letter of August 23, 1978. I find his discussion to be persuasive. I find that there was substantial relevant credible evidence to sustain all of the charges. In making this finding, I exclude from consideration the statements made by voluntary witnesses (such as Defendant Anthony Rutledge) not called by the International Union.

answer questions on cross-examination. Tr. (II) 74–79.

Lowell Kaanehe was called as a witness by the International Union and testified in support of the trusteeship. Tr. (II) 80–85. He refused to be cross-examined by Mr. Tam unless Mr. Tam would agree to testify and to be cross-examined. Tr. (II) 85–88.

Berna Iosua was not called by the International Union but appeared voluntarily and made a statement. Tr. (II) 88–94. She refused to be cross-examined by Mr. Tam unless Mr. Tam would agree to testify and to be cross-examined. Tr. (II) 94.

Sally Gomes was called as a witness by the International Union and testified in support of the trusteeship. Tr. (II) 140–151, 154–156. She refused to be cross-examined by Mr. Tam unless Mr. Tam would agree to testify and to be cross-examined. Tr. (II) 151–153.

At the beginning of the third day of the hearing, Mr. Tam requested the appearance for examination or cross-examination as "adverse witnesses" of Herman Leavitt, Mr. Akawahu,

Anthony Rutledge, Lois Reeves, Rita Kubota, and Sally Gomes. Tr. (III) 3–6.

The International Trustee, Herman Leavitt, was called and cross-examined as an "adverse witness" by Mr. Tam. Tr. (II) 176–180, Tr. (III) 50–53, 57–79, 90–114. Mr. Kenneally also asked some questions of Mr. Leavitt during the cross-examination and afterwards at Tr. (III) 114–117.

Sally Gomes was recalled and was extensively cross-examined by Mr. Tam and re-examined by Mr. Kenneally. Tr. (III) 151–195.

Arthur Rutledge was recalled and was further cross-examined by Mr. Tam. Tr. (III) 202–230.

For purposes of my decision, I ignore the testimony at the fair hearing of Anthony Rutledge, Lowell Kaanehe, and Berna Iosua. Rita Kubota and Mr. Akawahu did not testify at all. Lois Reeves was a voluntary witness, not called by the International Union. Tr. (II) 120–124. She refused to be sworn or to be cross-examined. Her testimony at the fair hearing likewise is ignored by me.

Curiously, Plaintiff Tam did not testify (except by volunteering statements during questioning of other witnesses,) [18] and essentially limited his opposition to the trusteeship to cross-examination of the witnesses called by the International Union, except for some documentary evidence.[19]

International Vice President Leavitt's earlier conclusion that Plaintiff Tam and Defendant Rutledge were bent on destroying one another was demonstrated throughout the several sessions of the hearing conducted by Hearing Officer Joseph Belardi. The record of the hearing indicates that Plaintiff Tam's supporters picketed the hearing sessions, carrying signs that could be interpreted to have racist implications, and badgered some of the union members who spoke in favor of the trusteeship. The record of the hearing also indicates that Defendant Arthur Rutledge and his supporters were unnecessarily intransigent and disruptive.

■ Plaintiffs question the relevancy of the listed charges to any of the allowable purposes for establishment of a trusteeship set forth in Section 302 of the LMRDA, 29 U.S.C. § 462. One proper purpose will suffice to support the action of an international union in imposing a trusteeship on a local union. *See, Gordon v. Laborers' International Union of No. America,* 351 F.Supp. 824 (W.D.Okla.1972), *rev'd on other grounds,* 476 F.2d 1388 (Em.App.1973). Substantial credible evidence adduced at the fair hearing showed that the vendetta between the Tam forces and the Rutledge forces had raised serious questions about the financial interest of Local 5 in Unity House [20] and certain other real properties,[21] had seriously interrupted the cooperative efforts of union members in the field, had disrupted the operations of the head office, and had thwarted the efforts of the International Union and of the Secretary of Labor to have a valid election for local officials held. These conditions are among the charges made by the International Union, and an attempt by the International Union to resolve or correct these matters falls within the allowable statutory purposes.

■ When the issues raised by the pleadings herein as to the International Union came before me for trial in February and March 1979, the trusteeship had already been in existence for seven months. Thus, although I find and conclude that this trusteeship was established in good faith for an allowable purpose and in accordance with the constitution and bylaws of the International Union and the statutory requirements of the LMRDA, the further issue was raised as to whether the trusteeship was being maintained in good faith. On this issue extensive depositions were taken and received in evidence and further testimony was adduced from the stand.[22]

The sum and substance of the evidence is that Defendant Arthur Rutledge has been removed from office and from the payroll of Local 5, Plaintiff Tam has refused to join in the management of Local 5 under the trusteeship, Defendant Anthony Rutledge is

18. He stated that he was willing to testify and be cross-examined by Mr. Kenneally, but would not submit to cross-examination by anyone else.

19. He did call International Trustee Herman Leavitt as an adverse witness. He did not appeal to the General Executive Board from General President Hanley's decision to ratify and continue the trusteeship.

20. Unity House is apparently an eleemosynary corporation owned by members of Local 5 and of a local teamsters union. The attorneys for Mr. Tam are members of a firm that set up the corporation. For some reason not entirely clear to me, Mr. Tam's attorneys take the position that Local 5 as such has no interest in Unity House and should not even investigate the possibility that it might have. This does not appear to be that clear to me. The assets of Unity House consist principally of land and a building worth several millions of dollars.

21. There are apparently two other pieces of real property held in whole or in part for the benefit of the members of Local 5.

22. Depositions totaling 1201 pages, plus exhibits, were received as joint exhibits. Anthony Rutledge had been deposed extensively. Others deposed were Arthur Rutledge, Richard Tam, Herman Leavitt, Joseph Belardi, and Lydia Escuardo.

cooperating in the management of Local 5 under the trusteeship, and the competing forces are still gearing up for another bitter battle when the inevitable local election is held. Meanwhile, under the trusteeship, the main office of Local 5 has been reorganized, job descriptions have been clarified, and relative peace in the field has been reestablished. The overall situation is still unsettled by a pending appeal from my earlier decision in this case dismissing the action as to defendants other than the International Union, and by a state action involving Unity House.

On the record before me as of March 27, 1979, I find that plaintiffs have failed to prove by clear and convincing evidence that the trusteeship is not being maintained in good faith. Contrariwise, I find that Defendant International Union has shown affirmatively that the trusteeship is being maintained in good faith.

■ Finally, we reach the issue raised *sua sponte* by the court, that is, whether the imposition of the trusteeship on August 28, 1978, ousted the Secretary of Labor from jurisdiction to proceed in Civil No. 78–0191, an action brought on May 30, 1978, by the Secretary against Local 5 to bring about an election for all offices of Local 5 under the supervision of the Secretary.

This precise question has not been addressed in any other case of which I am aware.[23] Yet a common sense attempt to reconcile Section 401(b) of the LMRDA, 29 U.S.C. § 481(b), and Section 302 of the LMRDA, 29 U.S.C. § 462, leads me to the conclusion that the two provisions may be separately enforced, especially when the Secretary of Labor has exercised his authority pursuant to Section 402(b) of the LMRDA, 29 U.S.C. § 482(b), and actually filed a civil action prior to the imposition of a trusteeship.

A contrary view would have the effect of extending the three-year limitation within which a local labor organization shall elect its officers by the eighteen months during which a trusteeship may benefit from a presumption of validity. I am of the opinion that the requirement for local elections not less than every three years is one of the most important provisions of the LMRDA. Local democracy increases local autonomy and helps to obviate some of the abuses that led to the passage of the LMRDA. The provisions relating to trusteeships were designed to be restrictive to the same end, that is, to preserve as much local democracy and autonomy as possible while recognizing that situations may arise where an international union may have to step in.[24]

There may be special conditions that affect the timing of a local election under the supervision of the Secretary of Labor.[25] Some of these conditions may be the same ones that led to the imposition of a trusteeship. These are details for initial determination by the Secretary of Labor.

■ I conclude that the Secretary of Labor has the authority to determine whether and when a local election should be conducted notwithstanding the existence of a trus-

23. Interaction among the members of a local union, a local union, a trusteeship, and the Secretary of Labor, is not uncommon. *See McDonald v. Oliver*, 525 F.2d 1217 (5th Cir. 1976). *Wirtz v. Bottle Blowers Assn.*, 389 U.S. 463, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968) stands for the proposition that when the Secretary of Labor proves the existence of a violation under Section 401 of the LMRDA that may have affected the outcome of a challenged election, he is not deprived of the right to a court order voiding the challenged election and directing that a new election be conducted under his supervision because the union has meanwhile conducted another unsupervised election. I am extending this proposition by holding that he is not deprived of the right to a court order directing that an election be conducted under his supervision because the local union has meanwhile been placed under a trusteeship.

24. *See Benda v. Grand Lodge of Intern. Ass'n of Machinists*, 584 F.2d 308, 312–3 (9th Cir. 1979); *McDonald v. Oliver*, 525 F.2d 1217, 1228–9 (5th Cir. 1976); *United Bro. of Carpenters & Joiners of America v. Brown*, 343 F.2d 872, 882–3 (10th Cir. 1965).

25. The membership records of a local may be in such disarray that some time may be necessary just to determine who is entitled to vote. One can easily imagine other situations.

teeship by an international union over the local union.[26]

## SYNOPSIS

Judgment shall enter herein for Defendant International Union and against Plaintiffs on Count One of the Amended Verified Complaint filed herein on September 13, 1978.

An order shall enter lifting the stay and abatement of further proceedings in Civil No. 78–0191.

---

**26.** Adequate safeguards against arbitrary action by the Secretary of Labor exist by way of court trials and appellate reviews.