Peter J. BRENNAN, Secretary of Labor,
Plaintiff-Appellant,

v.

INDEPENDENT LIFT TRUCK BUILD-
ERS UNION, Defendant-Appellee.

No. 73–1065.

United States Court of Appeals,
Seventh Circuit.

Heard Nov. 30, 1973.

Decided Jan. 18, 1974.

Harlington Wood, Jr., Asst. Atty. Gen., Robert E. Kopp, Atty., Dept. of Justice, Washington, D. C., Henry A. Schwarz, U. S. Atty., Danville, Ill., for plaintiff-appellant.

Sherman Carmell, Sheldon M. Charone, Stephen B. Horwitz, Chicago, Ill., for defendant-appellee.

Before CLARK,* CUMMINGS and PELL, Circuit Judges.

CUMMINGS, Circuit Judge.

This suit was filed by the Secretary of Labor pursuant to the Labor-Management Reporting and Disclosure Act (29 U.S.C. § 401 et seq.) challenging the validity of the December 18, 1970, election of Terry Payne as president of the Independent Lift Truck Builders Union. The Union is an independent organization that represents approximately 900 employees of the Hyster Company at its Danville, Illinois, plant.

On October 16, 1970, union member Arthur Wolfe was discharged as an employee of Hyster. The Union initiated grievance proceedings on his behalf. On October 27, 1970, he filed a charge with the National Labor Relations Board contesting his discharge; this resulted in the issuance of a complaint by the Board's General Counsel alleging that Hyster had violated Sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act (29 U.S.C. § 158(a)(1) and 158(a)(3)). Because of this development, the Union did not pursue arbitration over the grievance it had filed with respect to Wolfe's discharge.

On September 22, 1971, a Labor Board trial examiner concluded that Hyster's discharge of Wolfe violated the National Labor Relations Act, and on January 26, 1972, the Board ordered Hyster to reinstate Wolfe with back pay. 195 NLRB 84. On March 20, 1973, this Court issued an order enforcing the Board's order. National Labor Relations Board v. Hyster Company (7th Cir. Nos. 72–1288 and 1403).

The Union's president has primary responsibility for enforcing the collective bargaining agreement with Hyster. Although paid by the Company, the president's entire working day is spent on union duties, mostly on Hyster's premises. As a discharged employee, Wolfe was barred by company rules from coming on its premises.

On November 23, 1970, Wolfe was nominated for the office of union president. However, on advice of counsel, the Union's election committee ruled that Wolfe's name could not appear on the ballot because of the following provisions of the Union's constitution:

"Article III, Section 1. * * * This Union shall consist of hourly-rated factory employees and other workers who may in the past, present or future be declared under the jurisdiction of this Union."

"Article XV, Section 3. * * * Candidates must be members in the Union for 24 months previous to the day of election and must have completed three years of continuous employment with the employer of the members of this Union."

In addition to relying on these constitutional provisions, the election committee reasoned that since the union president was required to give constant attention to problems and grievances occurring daily on Hyster's premises, Wolfe's inability to appear on the Company's premises as a discharged employee would disable him from carrying out the president's duties.

Although his name did not appear on the ballot at the December 18, 1970, election, Wolfe voted in that election and continued to mail his dues to the Union

---

* Associate Justice Tom C. Clark, Retired, of the United States Supreme Court, is sitting by designation.

after his discharge. The Union permitted Wolfe to vote in the election because, without waiving any rights, it chose not to litigate an injunctive proceeding he had commenced against it. It did not cash his dues checks because it believed the dues might have to be returned if Wolfe were unsuccessful in the Labor Board case involving his discharge. The Union took the position that Wolfe was no longer a member, although he was never suspended or expelled through any trial-type proceeding.

Wolfe filed a post-election protest with the Union. After the protest was denied, Wolfe filed a complaint with the Secretary of Labor on February 1, 1971, claiming that he was a paid-up member in good standing with the Union and that as a result of the Labor Board General Counsel's December 7, 1970, complaint, he was still an employee of Hyster for purposes of the election.

On February 3, 1971, a Department of Labor compliance officer requested union president Payne to produce all the Union's records concerning that election. The Union, through counsel, said it would only make available information with respect to Wolfe's status as a union member. Because of the Union's attitude, the Department of Labor served the Union and three of its officers with subpoenas *ad testificandum* and *duces tecum* on February 20, 1971. The subpoena *duces tecum* was limited to the Union's records "pertaining to the nominations of officers conducted on November 23, 1970, and the election of officers conducted on December 18, 1970 * * *." After union counsel wrote the Department of Labor asking for its

statutory authority for issuing the subpoenas, a Labor Department attorney telephoned him to respond but was informed that he was on vacation. The Regional Solicitor of the Department of Labor thereupon wrote union counsel that compliance with the subpoenas was expected on their March 3, 1971, return date. Because the subpoenas were not honored, the Secretary brought an enforcement action on April 28, 1971. Hodgson v. Independent Lift Truck Builders Union, No. Cv 71–63–D (E.D. Ill.). On July 8, 1971, the district court entered an order in that action requiring compliance with the subpoenas. Due in part to union counsel's vacation plans, the parties agreed to July 28, 1971, as the date for complying with the district court's order of July 8, 1971, and the records were examined and the testimony was taken on July 28th.

On September 7, 1971, the Secretary of Labor brought this suit asserting that a union member in good standing had been denied the right to be a candidate and that union members were denied a reasonable opportunity to nominate and vote for the candidate of their choice, all in violation of 29 U.S.C. § 481(e).[1] The Secretary sought a declaratory judgment that the December 18, 1970, election for the office of union president was null and void and requested the court to direct defendant to conduct new nominations and an election for that office under the Secretary's supervision.

In an unreported opinion, the district court found that the Secretary's complaint was barred by the sixty-day limitation in 29 U.S.C. § 482(b).[2] The

[1.] Section 481(e) provides in pertinent part:
"In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject * * * to reasonable qualifications uniformly imposed) and shall have the right to vote for or otherwise support the candidate or candidates of his choice, without being subject to penalty, discipline, or im-

proper interference or reprisal of any kind by such organization or any member thereof. * * * The election shall be conducted in accordance with the constitution and bylaws of such organization insofar as they are not inconsistent with the provisions of this subchapter."

2. Section 482(b) provides in pertinent part:
"The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this subchap-

court also held that Wolfe was not a union member in good standing within the meaning of 29 U.S.C. § 481(e) "because at the time of nomination he was not an hourly-rated factory employee as required by the defendant union's constitution." Accordingly, the district court found no violation of the Labor-Management Reporting and Disclosure Act. We reverse.

Wolfe's complaint with the Secretary was filed on February 1, 1971. Under 29 U.S.C. § 482(b), the Secretary had sixty days from the filing of Wolfe's complaint to bring a civil action (note 2 *supra*). This 60-day statute of limitations is tolled by "conduct on the part of the union which impede[s] or delay[s] the Secretary's investigation." Hodgson v. International Pressmen, 440 F.2d 1113, 1118–1119 (6th Cir. 1971), certiorari denied, 404 U.S. 828, 92 S.Ct. 63, 30 L.Ed.2d 56.[3] Here defendant Union declined to cooperate with the Department's investigation or to honor its subpoenas, requiring the Secretary to obtain a judgment ordering the Union to honor the subpoenas. Pursuant to that judgment, which was not appealed, the records sought were made available to the Secretary and the requested testimony was taken on July 28, 1971.

 The Union argues that its lack of cooperation should not toll the limitations period because it was at all times prepared to give the Secretary all documents relevant to Wolfe's complaint. Since the Secretary's complaint was no broader than Wolfe's, and could not have been under the Union's reading of Hodgson v. Steelworkers Local 6799, 403 U.S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510, its refusal to provide documents relevant to other aspects of the election assertedly

did not hinder the Secretary's investigation. But the *Steelworkers* case makes clear that the Secretary is entitled to investigate and raise in his complaint violations of which the union member was unaware. 403 U.S. at 340–341, 91 S.Ct. 1841. The Secretary was therefore entitled to all records pertaining to the election, as the district court held in enforcing the subpoenas, and the Union was not entitled to compel a piecemeal investigation by insisting that he accept whatever part of the documents it offered. The fact that the Secretary did not find probable cause to allege any violations of which Wolfe was unaware cannot retroactively validate the Union's offer of partial compliance.

 We hold that the statute of limitations was tolled from February 3, 1971, when the Secretary first requested this information from the Union, to at least July 8, 1971, when the court below compelled compliance with the subpoenas. The sixty-day limitation would therefore have ended on Saturday, September 4, 1971. Since September 5 was a Sunday and September 6 was Labor Day, September 7 was the next business day and a complaint filed on that day was still timely. Wirtz v. Pennsylvania Shipbuilders Association, 382 F.2d 237 (4th Cir. 1967). This resolution of the issue makes it unnecessary to decide the Secretary's further argument that the tolling continued until July 28, 1971, when the information was finally made available.

 Addressing ourselves to the merits, we hold that 29 U.S.C. § 481(e) [4] was violated because Wolfe was denied the right to be a candidate for union office. Wolfe was a member in good standing within the meaning of 29 U.S.

---

ter has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action * * * to set aside the invalid election, if any, and to direct the conduct of an election * * * under the supervision of the Secretary * * *."

3. Although this case involved a union waiver of the 60-day provision, the court of appeals and the district court both approved the reasoning of various impeding cases cited therein. See also Hodgson v. Machinists Lodge 851, 454 F.2d 545, 547 (7th Cir. 1971).

4. See note 1 *supra*.

C. § 402(*o*) [5] because he had been an hourly-rated employee as required by Article III, Section 1 of the union constitution, and had not thereafter voluntarily withdrawn from membership nor been expelled or suspended "after appropriate proceedings." [6] As a member in good standing, he was entitled to run for office unless barred by "reasonable qualifications uniformly imposed." 29 U.S.C. § 481(e) (note 1, *supra*).

The Union claims that its constitutional requirement that the candidate be a member who has completed three years of continuous employment with Hyster is such a qualification. We note initially that if the usage of "member" and "employment" in the union constitution is parallel to the statutory definitions of "member" and "employee", then Wolfe was still an employed member at the time of nomination and election. The statutory definition of "member" has just been discussed. 29 U.S.C. § 402(f) defines an employee as including any individual whose work has ceased "because of any unfair labor practice." [7] Wolfe's discharge was of no effect to deprive him of his status as an employee since he was at all relevant times actively contesting his discharge on unfair labor practice grounds, and he ultimately prevailed. In fact, the Union itself has conceded that "Wolfe, even after his discharge, fell within the statutory definition of 'employee'" (Br. 17).

The Union suggests, however, that its requirement of "hourly-rated factory employee" is more restrictive than any of the statutory definitions. The term "hourly-rated factory employee" appears in the section of the union constitution defining the consist of the Union. Article III, Section 1, *supra*. But it could arguably be incorporated into the section on candidate qualifications by that section's usage of "member" or "employment." Article XV, Section 3, *supra*. If "hourly-rated factory employee" is construed to bar from eligibility for office a member discharged by an employer where, as here, the member is actively contesting the discharge, then it is not a reasonable qualification. The reasonable qualification exception to Section 481(e) is not to "be given a broad reach." Wirtz v. Hotel Employees Local 6, 391 U.S. 492, 499, 88 S.Ct. 1743, 20 L.Ed.2d 763. We hold that for purposes relevant here, the Union was obligated to consider Wolfe as an employee until the question of the propriety of his discharge was resolved. It is true that if Wolfe were elected and his discharge finally upheld before his term of office expired, the Union might choose to demand his resignation or remove him and be put to the inconvenience of a special election. But this is a possibility for the union members to consider at election time, for they are the ones primarily responsible for passing on the qualifications of candidates under this statute. Wirtz v. Hotel Employees Local 6, 391 U.S. 492, 504, 88 S.Ct. 1743, 20 L.Ed.2d 763. This possible inconvenience to the Union is insignificant when compared to

5. Section 402(*o*) provides:
 " 'Member' or 'member in good standing', when used in reference to a labor organization, includes any person who has fulfilled the requirements for membership in such organization, and who neither has voluntarily withdrawn from membership nor has been expelled or suspended from membership after appropriate proceedings consistent with lawful provisions of the constitution and bylaws of such organization."

6. "[A]ppropriate proceedings" in Section 402(*o*) is apparently a reference to Section 411(a)(5), which provides:

"No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."

7. Section 402(f), provides in relevant part:
 " 'Employee' means any individual employed by an employer, and includes any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice * * *."

the threat to employee choice posed by permitting an employer to render a candidate ineligible for union election by illegally discharging him. Since Hyster discharged Wolfe because of "the nature and extent of his union activities as a steward" for the Union (195 NLRB at 91), it certainly would have disfavored his election as the union president.

The Union admits that its candidacy requirement of a full-time active employee could be found unreasonable in the case of an international union (Br. 22), and it has not demonstrated to our satisfaction why its being a 900-member independent somehow makes the rule reasonable. It is suggested that the union president is paid by Hyster, and for Hyster to pay a non-employee would violate Section 302 of the National Labor Relations Act (29 U.S.C. § 186). Whether that Section would be violated is not before us, but if the Union is correct, its position in this case is not helped. The record shows that Hyster pays the union president, who spends full time on union business and does no work for Hyster. Whether such payments violate Section 302 does not depend on whether the union officer who does no work for Hyster is or is not labeled an employee. The policy of Section 302 is to reduce management influence over employee representatives, and it would be contrary to that purpose to construe the Section in a manner which gave management an option to pay or not to pay a union officer's salary by designating or not designating him as an employee without regard to whether he actually performed any work for the company.

Finally, if Wolfe were elected union president, Hyster would have to allow him on its premises to avoid committing an unfair labor practice under Section 8(a)(1) of the National Labor Relations Act (29 U.S.C. § 158(a)(1)). Mid-America Transportation Company v. National Labor Relations Board, 325 F.2d 87 (7th Cir. 1962).

The Union has not only deprived Wolfe of his right to be a candidate for union office, but has also deprived its members of their rights under 29 U.S.C. § 481(e) to nominate and vote for him. The Secretary is entitled to a judgment declaring this election to be null and void and directing the Union to conduct new nominations and another election for the office of president under the Secretary's supervision. Wirtz v. Bottle Blowers Local 153, 389 U.S. 463, 88 S. Ct. 643, 19 L.Ed.2d 705.

Reversed and remanded.