701 F.2d 590
 112 L.R.R.M. (BNA) 3020, 96 Lab.Cas. P 14,088
 Mary TAYLOR, Robert Hale, Pete Penocvich, individually and
on behalf of all persons, members of the Great
Lakes Seamen's Union, Local 5000, United
Steelworkers of America,
Plaintiffs-Appellants,
v.
GREAT LAKES SEAMEN'S UNION, LOCAL 5000, UNITED STEELWORKERS
OF AMERICA; Danny Lee Lupu, President of Great
Lakes Seamen's Union, Local 5000, United
Steelworkers of America,
Defendants-Appellees.
 No. 81-3289.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 27, 1983.
Decided March 4, 1983.
 
 Theodore E. Meckler (argued), Meckler & Meckler, Cleveland, Ohio, Daniel E. Clifton, Hall, Clifton & Schwartz, New York City, for plaintiffs-appellants.
 Mark A. Rock, Schwarzwald, Robiner, Wolf & Rock, Cleveland, Ohio, Paul Whitehead (argued), Asst. Gen. Counsel, United Steelworkers of America, James D. English, United Steelworkers of America, Pittsburgh, Pa., Michael Gottesman, Bredhoff & Kaiser, Washington, D.C., for defendants-appellees.
 Before LIVELY and MARTIN, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This appeal concerns the legality of one aspect of the United Steelworkers' union membership policy. The specific issue before us is whether section 3(o ) of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. Sec. 402(o ), permits union locals to withdraw privileges of membership from persons who voluntarily terminate their employment in the union's jurisdiction.
 
 
 2
 Appellant Andre Maul, one of the plaintiffs below, joined Steelworkers' Local 5000 in September, 1979, when he went to work for Inland Steel in Ohio. On June 23, 1980, he quit his job in order to attend school. Early in 1981, while still unemployed, Maul asked Local 5000 for a ballot to enable him to vote in a union election scheduled for April 10, 1981. The Elections Committee refused his request and informed him by letter that:
 
 
 3
 [I]nasmuch as you terminated your employment with the [Inland Steel] Company June 23, 1980, you have no employer/employee relationship and are not considered to be a member in good standing with Local 5000. Therefore, you will not be forwarded a ballot to vote in the current election for Local Union officers.
 
 
 4
 In a challenge to this denial of voting privileges, Maul and other plaintiffs sought to enjoin the April election. The district court, however, upheld the Steelworkers' membership policy and denied relief. This appeal followed. We agree with the decision of the district court and affirm the judgment below.
 
 
 5
 Union membership policy is set by the International and implemented by chartered locals throughout the nation. The Steelworkers' International has consistently taken the position that members who voluntarily resign their "union" jobs automatically cease to be members.[1] Local 5000 has enforced this policy since 1961.[2] The International's membership rule is an outgrowth of language found in Article III, Sec. 1 of the Steelworkers' Constitution. That article, entitled "Membership," provides in part: "All working men and working women ... employed in and around ... mills, factories and establishments, or in any other place now or hereafter within the jurisdiction of the International Union ... are eligible to membership." (emphasis added). The International interprets Article III to mean that employment within the union's jurisdiction is both a prerequisite to and a continuing condition of membership.
 
 
 6
 The union asserts that this membership policy constitutes a proper exercise of its authority, under section 10(a)(1) of the LMRDA, to make "reasonable rules and regulations." 29 U.S.C. Sec. 411(a)(1). Section 101(a)(1) states:
 
 
 7
 (a)(1) Equal rights.--Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.
 
 
 8
 (emphasis added).
 
 
 9
 The appellants, on the other hand, contend that the language of section 3(o ) of the LMRDA prohibits the union from premising "membership" on continued employment. Section 3(o ) states:
 
 
 10
 "Member" or "member in good standing," when used in reference to a labor organization, includes any person who has fulfilled the requirements for membership in such organization and who neither has voluntarily withdrawn from membership nor has been expelled or suspended from membership after appropriate proceedings consistent with lawful provisions of the constitution and bylaws of such organization.
 
 
 11
 29 U.S.C. Sec. 402(o ) (emphasis added). according to appellantS, this provision guarantees continued union membership to anyone who has once fulfilled the threshold requirements and who has neither "voluntarily withdrawn" nor been "expelled after appropriate proceedings." Maul and his fellows argue that their previous employment satisfies the statutory criteria and that they are thus entitled to continued privileges of membership in Local 5000. To support their position, appellants cite two Seventh Circuit cases, Alvey v. General Electric Co., 622 F.2d 1279 (7th Cir.1980), and Brennan v. Independent Lift Truck Builders Union, 490 F.2d 213 (7th Cir.1974).
 
 
 12
 We have reviewed appellants' arguments carefully, but find them unpersuasive for several reasons.
 
 
 13
 First, neither authority cited by appellants bears directly on the present case. Both Brennan and Alvey involved former union members whose employment within their unions' jurisdiction had been terminated involuntarily through discharge or replacement of striking workers. As we observed earlier, the Steelworkers' membership policy presently in dispute would not apply to persons whose positions were similar to those occupied by the Brennan and Alvey plaintiffs. This crucial factual distinction, in our opinion, deprives the Seventh Circuit's rather broad language of any controlling weight in the controversy before us.
 
 
 14
 Second, we believe the union's membership policy as it applies to persons who voluntarily resign their jobs is a proper exercise of rulemaking authority under section 101(a)(1). It is well settled that a union's consistent interpretation of its own constitution will not be disturbed by a federal court unless the challenged regulation is "unreasonable." International Brotherhood of Boilermakers v. Hardeman, 401 U.S. 233, 91 S.Ct. 609, 28 L.Ed.2d 609 (1971). In this instance, we see nothing "unreasonable" about a rule which, in effect, guarantees that internal union affairs will be governed by those whose interests are most at stake--workers presently employed in the steel industry.
 
 
 15
 The Tenth Circuit's opinion in Williams v. International Typographical Union, 423 F.2d 1295 (10th Cir.), cert. denied, 400 U.S. 824, 91 S.Ct. 47, 27 L.Ed.2d 53 (1970), supports our conclusion. In that case, the plaintiff left full-time employment as a printer to become a technical writer. His printers' local reclassified him as a member "not working at the trade." This change resulted in Williams' loss of voting rights and priority. The court rejected Williams' challenge to the reclassification and held that the union's action was "reasonable" within the meaning of section 101(a)(1).
 
 
 16
 The question is the reasonableness of the International's regulation prohibiting a member classified as "not at the trade" from voting on wage scales. The evidence for the Unions was that those not primarily dependent on the printing business for their livelihood, a characteristic found in the not-at-the-trade classification, do not have the vital interest in wage scales which is present in those who are first and foremost printers. We believe that the regulation is reasonable and does not violate the Act.
 
 
 17
 423 F.2d at 1298.
 
 
 18
 Finally, we find nothing in the LMRDA or its legislative history to indicate that Congress intended the "has fulfilled the requirements of membership" language of section 3(o ) to be a guarantee of continued membership to ex-employees like the appellants. On the contrary, the floor debates establish conclusively that Congress was determined to preserve the right of a labor organization "to prescribe its own rules with respect to the acquisition and retention of membership." 29 U.S.C. Sec. 158(b)(1)(A) (emphasis added).
 
 
 19
 The judgment below is affirmed.
 
 
 
 [1]
 The International's membership guidelines distinguish between voluntary resignation and involuntary loss of employment by lay-off or discharge. For example, an employee who is laid off subject to recall by his employer remains a union member "in good standing" for the first twelve months of the lay-off. Thereafter, he is considered a member "not in good standing" until his recall rights expire. A discharged employee remains a "member" as long as a grievance against the discharge is pending. It is important to note that the present case deals only with the membership status of voluntary resignations
 
 
 [2]
 Steelworkers locals apparently retain a modicum of discretion in their implementation of the International's policy. Local 5000, for example, does not require payment of a second initiation fee by former members who quit their jobs but find other "union" employment within a two-year period. The rationale for this rule is presumably: (a) Local 5000's high initiation fee; and (b) the relatively transient character of employment in the Great Lakes shipping industry