William E. BROCK, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

AMERICAN POSTAL WORKERS UNION, AFL–CIO, CHICAGO LOCAL, Defendant-Appellee.

No. 86–1701.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 1, 1986.

Decided March 26, 1987.

Denise Sudell, Dept. of Labor, Washington, D.C., for plaintiff-appellant.

Jerome Schur, Katz, Friedman, Schur & Eagle, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, WOOD, Circuit Judge, and PELL, Senior Circuit Judge.

PELL, Senior Circuit Judge.

This appeal involves the timeliness of an action brought by the Secretary of Labor (Secretary) against the American Postal Workers Union, AFL–CIO, Chicago Local (the Union) under Title IV of the Labor Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 401 *et seq.* The district court granted summary judgment for the Union, finding that the Secretary's action was barred by the sixty-day statute of limitations in 29 U.S.C. § 482(b). Because material questions of fact remain as to whether the doctrine of equitable tolling excused the Secretary's delay in filing suit, we reverse and remand to the district court for further proceedings.

## I.

The facts, viewed in the light most favorable to the Secretary, are as follows. The Union conducted an election by mail ballot in which all ballots were to be delivered to a neutral post office by 2:00 p.m. on April 30, 1984. After the ballots had been tabulated, the post office notified the Union that it had discovered, shortly after 2:00 p.m., approximately 500 additional ballots. The election committee, citing the Union's bylaws, refused to count these ballots in the election results because they were not in its possession at 2:00 p.m.

On December 6, 1984, after exhausting his internal union remedies, Willie Fikes, a Union member in good standing, filed a complaint with the Secretary pursuant to 29 U.S.C. § 482(a). Fikes alleged that the April 30 election was fraudulent. Among other things, Fikes asserted that ballots had not been properly secured prior to being mailed to the Union's members and thus some ballots had been stolen; that cast ballots mailed by Union members to the post office lock box designated for collection of ballots were intercepted, and forged ballots substituted for them; and that cast ballots were not properly secured at the lock box.

Acting on Fikes' complaint, Bobbie West, an investigator with the Department of Labor's (DOL) Office of Labor-Management Standards (OLMS), began an investigation of the April 30 election. On December 12, 1984, she telephoned the Union's offices to schedule appointments with Union officials and to ask to examine election records. The Union's office secretary, Donnita Ackery, told her that the Union's general president, Tommy Briscoe, was scheduled to be at a conference until December 14. Ackery also said that none of the Union's five general officers or five members of the election committee were available to speak with her.

West telephoned both Tommie Johnson, the election committee chairperson, and Anthony Columbus, the Union's financial secretary, on December 13. She scheduled appointments with them for that afternoon at the Union's offices. Johnson subsequently cancelled her appointment; Columbus did not show up for his. Ackery refused to tell West where Columbus or any other Union officials were.

On that same day, West drafted a letter to Johnson for the signature of Ronald Lehman, the OLMS Area Administrator. The letter reminded Johnson of the purpose of the DOL's investigation. In addition, it emphasized that information would be needed from Union officials and that the Union would be required to make its election records available. On December 13, copies of the letter were sent to Johnson by certified mail and to nine other Union officials by regular mail. West also attempted personally to deliver a copy of the letter to the Union's offices, but Ackery refused to accept the letter.

On Friday, December 14, after West was told that Briscoe was not at the Union's offices, she left several messages for him to call her as soon as possible. On Monday, December 17, she was able to speak with him and he acknowledged receipt of the letter and promised her that the Union's records would be made available no later than December 19. When she called the Union offices on December 18 to learn the time and place she would be allowed to inspect the records, Elizabeth Bell, the Union's general treasurer informed her that Briscoe was unavailable. Bell also related that the Union's attorney, Jerome Schur, had advised the Union not to release its election records until he had completed his own investigation, and that Schur would contact West by December 21. West contacted Schur and he confirmed this information and asked her not to contact Union officials while he was conducting his investigation.

On December 21, 1984, Schur notified West that the Union would cooperate with the investigation only after he received a copy of the Union member's complaint. He wanted to determine the specific charges against the Union and whether the complainant was a member in good standing. Because it was not the policy of the DOL to do so and the American Postal Workers Union had previously advised the OLMS that the complaint was proper, West refused to provide him with a copy of the complaint. On December 24, West received a letter from Schur reiterating his request for a copy of the complaint.

Because of the Union's refusal to make its election records available, on December 26, Lehman issued a subpoena *duces tecum* ordering the Union to produce election records and related documents in twelve different categories, including "all ballots cast, unused, voided and challenged." On December 27, West served the subpoena on Briscoe at the Union's offices. The Union

produced some of the documents requested in the subpoena on January 11 and January 17, but refused to produce the 500 ballots which it claimed were not delivered to the post office on time. Accordingly, John Secaras, the DOL's Regional Solicitor, by letter dated January 23, 1985, advised Schur that the DOL considered the sixty-day statute of limitations tolled pending the Union's compliance with the subpoena. The letter also stated that the DOL would initiate the necessary steps to effect enforcement of the subpoena and that the Regional Solicitor's Office should be notified by January 25 if the Union decided to comply with the subpoena. In addition, at some point in January, three officials of the Union met with DOL investigators and responded to their questions.

The Secretary did not file suit to enforce the subpoena until April 9, 1985. On June 27, 1985, a district court judge entered an order requiring the Union to produce the 500 late ballots no later than July 2. They were produced on July 2.

After examining and tallying the ballots on August 2 and 9, the Secretary determined that the Union's failure to include them in the election results violated § 401(e) of the LMRDA, 29 U.S.C. § 481(e). On August 20, 1985, the Secretary filed suit in the district court to overturn the election. The complaint alleged that union members in good standing had been denied the right to vote for candidates of their choice and to be candidates themselves. In addition, members not in good standing had been allowed to run as candidates and to be installed as Union officers.

The Union filed a motion for judgment on the pleadings, which the district court considered as a motion for summary judgment. The Union argued that the Secretary's suit was barred by the sixty-day statute of limitations in 29 U.S.C. § 482(b). The district court agreed, rejecting the Secretary's argument that the Union's refusal to cooperate with the investigation had tolled the statute from December 12 until July 2. The district court ruled that 1) the statute of limitations was tolled on December 21 by the Union's explicit refusal to cooperate with the Secretary's investigation, but the Union's conduct between December 12 and December 21 did not toll the statute; 2) even if the statute had been tolled on December 12, the Secretary's unreasonable delay in seeking to enforce the subpoena set the statute running again; and 3) the statute was tolled from April 9, the date the Secretary filed suit to enforce the subpoena until the district court ordered the Union to comply with the subpoena on June 27. The Secretary appeals from the district court's order granting summary judgment for the Union.

## II.

Summary judgment is appropriate only when the moving party has established that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The existence of a genuine issue of material fact is a legal determination subject to *de novo* review. *In re Colonial Discount Corp.*, 807 F.2d 594, 596 (7th Cir.1986). In considering a motion for summary judgment, all ambiguities and reasonable inferences are to be resolved against the moving party and in favor of the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Caldwell v. Miller*, 790 F.2d 589, 597 (7th Cir.1986). On appeal, the reviewing court must consider the entire record; if a study of the record reveals that inferences contrary to those drawn by the district court are permissible, then summary judgment should be reversed. *Munson v. Friske*, 754 F.2d 683, 690 (7th Cir.1985).

The procedure for handling union election complaints is outlined in 29 U.S.C. § 482. Any member of a labor union who contends that the union has violated the LMRDA, may, after exhausting internal remedies, file a complaint with the Secretary. The Secretary, after receiving such complaint, "shall investigate ... and, if he finds probable cause to believe that a violation ... has occurred and has not been remedied, ... shall, within sixty days after

filing of such complaint, bring a civil action against the labor organization...."

In this case, Fikes' complaint, filed on December 6, 1984, commenced the sixty-day statute of limitations period for the Secretary to file suit to set aside the election. The Secretary's suit was filed on August 20, 1985, 257 days later. The Secretary argues, however, that the statute was tolled from December 12, the date West first contacted the Union until July 2, the date the Union produced the late ballots. The Secretary concedes that the six days before West first contacted the Union after receiving Fikes' complaint (December 6–December 12) are not subject to tolling. The Secretary also admits that the forty-nine days between the Union's compliance with the subpoena and the filing of this action (July 2–August 20) are not subject to tolling. The Union, on the other hand, agrees that the statute should be tolled for the seventy-two days (April 9–June 27) between the Secretary's filing of the suit to enforce the subpoena and the district court's order requiring the Union to comply. The parties' disagreement thus focuses on whether the statute was tolled from December 12 until April 9. The Secretary claims that the Union impeded and delayed the investigation during that time. The Union asserts that it cooperated with the investigation by producing almost all of the requested documents and by allowing DOL investigators to question Union officials. In addition, it argues that the Secretary's own lack of diligence in pursuing enforcement of the subpoena should bar the action. The parties also disagree as to whether the statute was tolled between June 27 and July 2.

■ This court has recognized that the sixty-day limitations period may be tolled by conduct on the part of the Union which impedes or delays the Secretary's investigation. *Brennan v. Independent Lift Truck Builders Union,* 490 F.2d 213, 216 (7th Cir.1974) (citing *Hodgson v. International Printing Pressmen,* 440 F.2d 1113, 1118–19 (6th Cir.), *cert. denied,* 404 U.S. 828, 92 S.Ct. 63, 30 L.Ed.2d 56 (1971)). "To allow delay or deliberate concealment of election records to make it impossible for the Secretary to resolve a complaint to the point of finding (or not finding) probable cause, would offer a tempting method of defeating the basic purpose of Title IV." *Hodgson,* 440 F.2d at 1119.

In *Brennan,* a union member filed a complaint with the Secretary on February 1, 1971. On February 3, a DOL compliance officer asked the Union president to produce election records. The Union, through counsel, said that it would only make available information with respect to the complainant's status as a Union member. On February 20, the DOL served the Union president and three other officials with subpoenas *ad testificandum* and *duces tecum.* After Union counsel wrote the DOL asking what its statutory authority was for issuing the subpoenas, a DOL attorney telephoned to respond but was informed that counsel was on vacation. The Regional Solicitor of the DOL then wrote the Union counsel that compliance with the subpoenas was expected on March 3. The subpoenas were not honored and the Secretary brought an enforcement action on April 28. On July 8, the district court entered an order requiring compliance with the subpoenas. The parties agreed to July 28 as the date for compliance. On September 7, the Secretary brought his suit to overturn the election. The district court found that the Secretary's complaint was untimely. This court reversed, holding that the statute was tolled from February 3, when the DOL first requested information from the Union, to at least July 8, when the district court ordered compliance with the subpoenas. The suit was therefore timely and there was no need to consider whether the tolling continued until the information was finally made available to the Secretary on July 28.

■ Applying the *Brennan* standards to this case, the district court found that the statute was not tolled until December 21 when Union counsel explicitly refused to cooperate with the investigation. The court ruled specifically that the statute was not tolled on December 12 when West phoned the Union's offices for the first

time and Ackery informed her that no Union officials or election committee members were available to speak with her. The district court assumed that Ackery was not told the purpose of the call, but even if she had been told, the fact that no one was available to speak with West could not be construed as conduct designed to impede or delay the investigation. We agree. In *Brennan,* the statute was tolled from the date the Secretary first requested information from the Union. In this case, the Secretary does not claim that West requested information from the Union on December 12. Nothing in the record indicates that West requested information from Ackery regarding the election or that Ackery, an office secretary, was even in a position to provide that information. Nor does the Secretary assert that the Union officials were in fact available to speak with West on that day. Since there is no disputed issue regarding the Union's conduct on December 12 the district court properly held that the statute was not tolled on that day.

█ The district court also held that the statute was not tolled on December 13 when Union officials failed to keep their scheduled appointments with West. The district court believed that the Union officials were not impeding or delaying the investigation because "it is just as reasonable to interpret [their actions] as the regular practice of busy, if somewhat irresponsible, businessmen as it is to interpret those actions as a purposeful evasion of the Investigator." The court further found that Ackery's refusal to accept receipt of the letter from West on December 13 could not be interpreted as conduct obstructing the investigation. The standard for granting summary judgment is not whether one party's version of the facts is as reasonable as another's. All reasonable inferences from the facts must be drawn in the light most favorable to the Secretary. Here, between December 13 and December 21, Union representatives failed to keep appointments, told West initially that she would receive the election records, and then told her that the Union would not provide any information until counsel had completed his investigation. Because of

the conflicting inferences to be drawn from these facts, it cannot be said as a matter of law that the Union was not impeding or delaying the investigation during this time. It was therefore inappropriate to conclude that the statute was not tolled from December 13 to December 21.

█ The district court also ruled that even if the statute had been tolled on December 12, the Secretary's unreasonable delay in seeking enforcement of the subpoena started the statute running again. Although the court found that the statute was tolled when the Union did not fully comply with the subpoena, it did not specifically rule as to what date that tolling period ended. The court apparently viewed the January 23 letter from the DOL Regional Solicitor as the beginning of the Secretary's inordinate delay. In that letter the Union was informed that the DOL considered the statute tolled until the Union fully complied with the subpoena and that the DOL would take appropriate steps to enforce the subpoena if the Union did not comply. The court below stated that the Secretary had offered no facts to justify his delay of two and one half months between making the final demand for compliance and filing the enforcement suit. The Secretary claims that the delay was reasonable because the DOL must consult with several other federal offices before taking legal action. He also points out that tolling has been upheld in other cases despite delay in filing an enforcement suit. *See, e.g., Brennan,* 490 F.2d at 216 (tolling applicable despite seventy-six day delay between issuance of subpoena and filing of enforcement suit; fifty-seven day delay between return date of subpoena and enforcement suit); *Donovan v. District 1199, New York Health & Hospital Care Employees Union,* 760 F.2d 440, 441–42 (2d Cir.1985) (ninety-seven day delay between issuance of subpoena and filing of enforcement suit; tolling upheld). We are not convinced that this evidence, viewed in the light most favorable to the Secretary, demonstrates conclusively that the Secretary's delay was unreasonable. At the very least, the evidence raises a factual issue for which the

Secretary should be allowed to offer additional evidence. *See United States Shoe Corp. v. Hackett,* 793 F.2d 161, 166 (7th Cir.1986).

█ Finally, the district court ruled that the statute was tolled from April 9, the date the Secretary filed suit to enforce the subpoena, until June 27, the date of the district court's order requiring compliance. But the court found it unnecessary, in light of its earlier analysis, to determine whether the tolling period extended until July 2, the date the district court judge set for the Union to comply with the subpoena. In *Brennan,* we held that the tolling period extends to at least the date of the district court order requiring compliance. In *Brennan,* however, there was no need to determine whether the tolling could be extended to the date the information sought in the subpoena was finally made available. In this case, the tolling period should be extended to July 2. A district court judge, not the Secretary, set July 2 as the date for the Union to comply with the subpoena. The statute did not begin to run again until the Union provided, as the judge had ordered, the information the Secretary needed to complete his investigation.

As we stated earlier, all conflicting inferences are to be resolved in favor of the Secretary. We come away from an examination of this record with the belief that an inference was drawable by a trier of fact that from the very inception of the DOL's inquiries the Union engaged in dilatory tactics. On the present record, several factual questions remain unresolved as to whether the Secretary's suit was timely. Accordingly, we reverse and remand to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.