682 F.Supp. 1323 (1988)
HARDY, Daniel W. and Wilson, Ernest G.
v.
INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS, and Abbott, Ande.
Civ. A. No. 86-4520.
United States District Court, E.D. Pennsylvania.
February 29, 1988.
*1324 *1325 Judith Brown Chomsky, Ira Jay Katz, Philadelphia, Pa., for plaintiffs.
William Einhorn, Sagot & Jennings, Philadelphia, Pa., Steve A.J. Bukaty, Blake & Uhlig, P.A., Kansas City, Kan., for defendants.

MEMORANDUM
CLIFFORD SCOTT GREEN, District Judge.
Plaintiffs Daniel W. Hardy and Ernest G. Wilson are the former president and executive secretary respectively of Local Lodge 802 ("Lodge 802"), the collective bargaining representatives of ship building employees at the Pennsylvania Ship Building Company ("Penn Ship") in Chester, Pennsylvania. Lodge 802 is a subordinate union branch of the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths Forgers and Helpers ("International"). The defendants are International and Ande Abbott, the former appointed trustee of Local 802.
In this action, plaintiffs challenge International's imposition and administration of a trusteeship over Lodge 802 from May 19, 1986 through December 31, 1986 and subsequent internal union proceedings against plaintiffs as violations of Title III of the Labor Management Reporting and Disclosure Act ("LMRDA" or "the Act"), 29 U.S. C. § 461 et seq. and International's Constitution. As relief, plaintiffs seek an order (1) declaring the trusteeship invalid[1], (2) declaring defendants' removal of plaintiffs from office was invalid and reinstating the plaintiffs to their respective offices, (3) setting aside International's decision on the internal union charges and (4) awarding plaintiffs compensatory and punitive damages, costs, and attorney fees.
To date, plaintiffs have filed several motions with this court. Currently pending are three motions by plaintiff: a motion for summary judgment, a motion for summary judgment on internal union charges and a motion for a preliminary injunction on internal union charges. In turn, defendants have filed a motion for summary judgment. The record before the court consists not only of the pleadings, but also of the depositions, affidavits and hearing record on the motion for preliminary injunctive relief. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1337, and 29 U.S.C. §§ 185, 464(a) and (b).
Undisputed facts, as set forth in the proposed pretrial order and elsewhere in the pleadings, include the following: Plaintiffs Hardy and Wilson assumed their offices as president and executive secretary of Lodge 802 on October 1, 1984. Their terms were scheduled to end on June 30, 1987. At the time plaintiffs assumed office Lodge 802 was facing financial difficulties. By the beginning of 1986, Lodge 802 owed approximately $35,000 in per capita tax to International, notwithstanding the fact that the lodge members had paid their dues to the lodge, and an additional $17,000 in unpaid real estate taxes and penalties on its building. The growing arrearage in per capita tax threatened to jeopardize Lodge 802's standing with International. Normally, such taxes, paid from membership dues, went to support the activities of International *1326 on behalf of all subordinate lodges. One such activity was International's Consolidated Convention which occurred every five years and was scheduled to take place in August, 1986. Because of the outstanding per capita tax arrearages, Lodge 802 was not entitled to participate in the convention.
The parties agree that the financial health of Lodge 802 has long been intertwined with that of Penn Ship. In prior times of full employment at the shipyard, when Lodge 802 had several thousand members, the Lodge employed a full-time business manager, and paid lost time compensation of four hours per day to two chief stewards for services rendered. This manpower was considered necessary to service the members of the bargaining unit. However, when Penn Ship began to experience difficult economic times in 1985 and resorted to mass layoffs, Lodge 802 felt the impact through falling membership rolls. During this financial crisis, it appears that union members made several unsuccessful attempts to persuade and direct Hardy and Wilson to undertake certain cost-cutting measures such as having secretary Wilson and Chief Steward Frank Sutton return to work full-time in the shipyard rather than to continue to draw salaries from the limited funds of the union. This issue was also the focus of several communications occurring between plaintiffs and the International.
Defendants established a trusteeship over the Lodge on May 19, 1986. Mr. Abbott delivered to Hardy on May 19, 1986, and to Wilson on May 20, 1986, copies of a telegram from International President Charles W. Jones. The telegram advised all lodge officers that "[a]s a consequence of the problems which have arisen relating to the administration of the affairs of Lodge 802," President Jones was exercising his emergency powers pursuant to Article XVIII, section 3 of the Constitution to (1) appoint Ande Abbott as a trustee over Local 802, (2) suspend Hardy and Wilson from their offices "immediately and indefinitely" and (3) appoint a hearing officer with regard to the trusteeship.
Trustee Abbott, upon delivering the telegram to Hardy, commented that the only reasons he was aware of for the trusteeship were the per capita tax owed to International and complaints received by International about "what was happening" in the Lodge.
On or about May 20, 1986, Trustee Abbott gave Hardy a copy of the "Official Hearing Notice" which set the time and place of the trusteeship hearing. Hardy discussed the trusteeship hearing with Abbott on or about May 28 at the Lodge.
The trusteeship hearing took place on June 2, 1986. Plaintiffs appeared, testified and presented rebuttal evidence. The hearing officer did not permit plaintiffs or any other person to cross-examine witnesses.
Following the hearing, International President Jones sent ballots to members of the Executive Council of International requesting their vote on whether to continue the trusteeship. By September 3, 1986 a majority of the Executive Council had voted in favor of continuing the trusteeship.[2]
On September 16, 1986, Trustee Abbott filed internal union charges against plaintiffs, alleging that they violated Article XVII, section 1(g) of the Constitution by "mishandling, misappropriating or otherwise misusing union funds or properties." The particular facts cited as a basis for the charges included Hardy's allegedly wrongful salary overpayments, in excess of the *1327 salary prescribed by the local's by-laws, to Wilson and lost time payments to Chief Steward Sutton.
A hearing on the internal union charges against plaintiffs was held on October 8, 1986. International officer Don Lacefield presided over the hearing, which the parties agree was "conducted in strict conformity" with the International Constitution. (Pretrial Order, p. 16). Sometime later that month the Executive Council found that plaintiffs had violated the Constitution and Lodge 802's by-laws with regard to the payments to Wilson. By order of the Executive Council, plaintiffs were removed from office, prohibited from attending membership meetings and barred from candidacy for office for a period of five years. The Council also fined Wilson an amount equal to the alleged overpayments. The International President notified plaintiffs of the decision by letter dated November 11, 1986.
Sometime between October 27 and 29, the Executive Council voted to terminate the trusteeship over the Lodge effective December 31, 1986. Elections were held in December 1986 for president and executive secretary to serve the remainder of plaintiff's terms in office. The new officers assumed office on December 31, 1986, the effective date of the trusteeship's termination.
Although plaintiffs' second amended complaint sets out thirteen separate counts, the claims asserted fall into two broad categories: (1) that the trusteeship was not properly imposed, and (2) that the internal union disciplinary charges and finding of guilt were not proper. For the reasons stated below, summary judgment will be entered in defendants' favor and against plaintiffs.

I.
Under the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c). Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed `to secure the just, speedy, and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). As the Court stated in Celotex, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 2552-53.
Hence, unless the facts and evidence of the case viewed in a light most favorable to the nonmoving party can sufficiently establish the essential elements of said party's case, the trial court must grant the movant's request for summary judgment. Moreover, in conformity with the Court's decision in Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2512-14, 91 L.Ed.2d 202 (1986), a trial court in ruling on a motion for summary judgment must also take into account the standard of proof relevant to a trial on the merits.

II.

Validity of the Trusteeship
Where a labor organization imposes a trusteeship over a member local, "in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing" said trusteeship is presumed valid. 29 U.S. C. § 464(c); Plentty v. Laborers' International Union of North America, 302 F.Supp. 332, 337 (E.D.Pa.1969). Litigants seeking to challenge trusteeships shielded by this statutory presumption must do so by presenting "clear and convincing proof" that the trusteeship was not imposed for a proper purpose as defined by the Act. Id.

A. Compliance with International's Constitution and Bylaws.

Article XVIII of the Constitution permits International to summarily impose a trusteeship in emergency situations "imminently *1328 threatening the welfare, funds or property of the subordinate body" as long as a hearing is held within 15 days."
Although holding a hearing prior to the imposition of a trusteeship is the preferred and normal method for imposing a trusteeship, due process is satisfied in emergency situations where a hearing is scheduled for the earliest practicable date thereafter. Local U. 13410, UMW v. United Mine Workers, 475 F.2d 906, 915 D.C. Cir.1973).
Given the level of deference accorded to an international's enforcement of the provisions of its constitution this court must uphold an international's finding of an emergency where the acting official who imposed the trusteeship "could reasonably believe that an emergency situation does not allow time for [a prior] hearing." Local Union 13410, 475 F.2d at 913. See also Retail Clerks Union, Local 770 v. Retail Clerks International Association, 479 F.2d 54, 55 (9th Cir.1973) (holding that district court has discretion to determine whether it could reasonably be said that an emergency exists) (emphasis added).
It is undisputed that (1) the local was in financial difficulties, a fact known to plaintiffs and defendants (2) under the Constitution, Lodge 802 was not eligible to participate in the convention so long as an outstanding per capita tax arrearage existed, (3) the arrearage existed notwithstanding payment of dues by local lodge members, (4) at least one meeting of the lodge to address these financial issues was cancelled by plaintiffs contrary to lodge procedures and (5) the International President had received complaints concerning these matters, and the alleged failure of plaintiffs to conform to democratic procedures, and to promptly process grievances. Given this information, it is clear that President Jones could reasonably believe that an emergency existed and lawfully impose a trusteeship prior to hearing.

B. Fair Hearing & Adequacy of Notice.

With regard to the hearing on the continuation of the trusteeship held on June 2, 1986 ("trusteeship hearing"), plaintiffs challenge both the adequacy of the notice and the fairness of the proceedings. Plaintiffs contend that they were denied notice with regard to the subject matter of the trusteeship hearing. Hence they argue they were denied a full and fair opportunity to prepare for trial and argue against the trusteeship.
However, it is undisputed that International President Charles Jones notified plaintiffs in his telegram of May 19, 1986 that "[a]s a consequence of the problems which have arisen relating to the administration of the affairs of Lodge 802, I am herewith using the emergency powers vested in me under Article Eighteen, Section Three ... to place Lodge 802 under emergency trusteeship effective May 19, 1986." Mr. Jones thereafter recited from the Constitution the various grounds for the imposition of a trusteeship:
Secession or threatened secession; dissolution or threatened dissolution, dissipation or loss of funds or assets or financial malpractice or corruption or threat thereof; violation or treatened [sic] violation of Collective Bargaining Agreements; the deprivation of democratic procedures and other activities constituting a violation of this constitution and threatening the welfare of the subordinate body membership of the International Brotherhood ...
Besides this telegram, plaintiffs received individual notice of the time and place of the hearing and discussed the hearing with Trustee Abbott. Nevertheless, plaintiffs argue that the notice given them on the trusteeship hearing was inadequate.
Plaintiffs have produced no evidence which would support a finding of inadequate notice. The focus of the June 2, 1986 hearing was not the conduct of the plaintiffs but rather the state of Local 802. Plaintiffs were not themselves on trial and thus the type of detailed written notices urged by plaintiff was not required by law or the constitution of the International.
Plaintiffs also argue that the unavailability of cross-examination of witnesses denied them a fair hearing. However, plaintiffs' claim to a procedural entitlement to cross-examination at the trusteeship *1329 hearing is unsupported by statute or case law. Although such hearings have to comply with due process, there is no requirement that they possess all the trappings of formal judicial proceedings. See Luggage Workers, Local 167 v. International Leather Goods, Plastics & Novelty Workers' Union, 316 F.Supp. 500, 508 (D.C.Del. 1970) (fair hearings do not rise to the level of judicial proceedings with rigid rules of pleading). Accord, Local Union 1983, IB-PAT C.A.P.E. AFL-CIO of Cape May County, N.J. v. International Brotherhood of Painters and Allied Trades, 598 F.Supp. 1056 (D.C.N.J.1984) (all formalities need not be observed); Tam v. Rutledge, 475 F.Supp. 559, 569 (D.Hawaii 1979); Schonfeld v. Raftery, 271 F.Supp. 128, 146 (S.D.N.Y.), aff'd 381 F.2d 446 (2d Cir.1967).
As observed by the court in Tam v. Rutledge, "[t]he test of the adequacy of a fair hearing is not whether it meets the requirements of an error free judicial trial but whether it was conducted in reasonable good faith as an approximate effort to achieve its objective." 475 F.Supp. at 569.
The trusteeship hearing, despite the absence of an opportunity for any person to cross-examine witnesses did comport with the LMRDA's guarantee of a fair hearing. Plaintiffs testified extensively at the hearing, and utilized the opportunity provided by the hearing officer to present rebuttal evidence. Moreover, plaintiffs' counsel by stipulation admits that plaintiffs had a full and fair opportunity to state their case, and that their objection is limited to the lack of opportunity to cross-examine witnesses.

C. Purpose of the Trusteeship.

Plaintiffs also challenge the trusteeship on the ground that International imposed it for improper reasons.[3] However, in accordance with federal law this court must presume the validity of the trusteeships imposed by an international in the absence of "clear and convincing proof that the trusteeship was not established or maintained in good faith" for one of the valid purposes specified by the Act. 29 U.S.C. § 464(c).[4]
Title III, § 302 of the Act, 29 U.S.C. § 462 provides:
Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and by-laws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization.
In challenging International's appointment of a trustee over Lodge 802, plaintiffs argue that the real purpose behind International's action was not one of the legitimate purposes of § 462. Rather, they contend, the trusteeship was imposed (1) because plaintiffs opposed the slate of delegates favored by International to go to the International Convention and (2) in retaliation for plaintiffs initiation of this action against International.
The imposition of the trusteeship did not violate the Constitution or by-laws of the local, and plaintiffs on summary judgment have produced no evidence which would support a finding that the hearing was *1330 unfair. Plaintiffs in order to succeed on their claim must present clear and convincing proof of bad faith or illicit purpose. 29 U.S.C. § 464(c). Here, plaintiffs rely on their own opinions and beliefs, but point to no evidence that would satisfy their burden to establish improper purpose by clear and convincing proof.
The fact that plaintiffs challenged the International president and the slate of officers he supported is insufficient standing alone to meet plaintiff's burden, particularly, where as here, the financial disarray of the local is undisputed.

III.

Internal Union Charges
Plaintiffs challenge the internal union charges filed against them and the sanctions imposed on the following grounds: (1) that the charges filed were untimely and thus in violation of the International's Constitution, (2) that the charges were filed in bad faith and for a retaliatory purpose and (3) that the final verdicts against plaintiffs were not supported by the evidence.
Article XVII of the Constitution governs disciplinary proceedings, trials and appeals. It reads in pertinent part:
Section 1. The basis of charges against officers or members of a subordinate body, against officers of the International Brotherhood or against a subordinate body itself shall include, but shall not be limited to, any one or more of the following offenses:
. . . . .
(g) mishandling, misappropriating or otherwise misusing union funds or properties.
. . . . .
Section 2. (a) Charges of violation of this Constitution or subordinate body By-Laws may be made by any member in good standing who has knowledge of the alleged violation. Charges shall at all times be made in good faith and within sixty (60) days after the date that the alleged violation occurred. However, this time limit will not apply to those charges wherein the basic facts and evidence pertaining thereto could not be accumulated or made known within that period of time. In no event will any charge be processed which is based on an alleged violation occurring more than one (1) year prior to the filing of such charge except that this time limit shall not apply to any charge alleging a violation of Section 1(g) of this Article. ... Charges shall be set forth in writing and a copy of the charges served upon the individual or body being charged by registered or certified mail, with return receipt requested to last known address, and a copy thereof filed with the President of the Local Lodge and the International President. Charges shall be set forth with sufficient definiteness to inform the accused of the nature and circumstances of the violations complained of, together with a reference to the particular subsection of Section 1 of this Article under which the charges were brought. If the charges are not filed in conformance with this paragraph, the International President is authorized to dismiss said charges.
Trustee Abbott notified President Wilson by letter dated September 16, 1986, sent certified mail return receipt requested, that internal union charges had been filed against him for "mishandling, misappropriating or otherwise misusing union funds or properties" in violation of § 1(g) of International's Constitution. A four page attachment accompanied the letter and provided a summary of the particular facts which allegedly warranted such a charge. A hearing was held on October 8, 1986 and plaintiffs at that time were permitted to confront and cross-examine witnesses.
Plaintiffs first attack the charges filed against them as untimely, and point for support to the requirement of § 2 that "[c]harges shall at all times be made in good faith and within sixty (60) days after the date that the alleged violation occurred." Since the charges were filed on September 16, 1986, more than sixty days after the June 2, 1986 trusteeship hearing, plaintiffs contend that the charges were invalid. Plaintiffs also maintain that these charges do not fall within the exception to the 60 day limit provided in § 2 for "those charges wherein the basic facts and evidence pertaining thereto could not be accumulated *1331 or made known within that period of time." Indeed, it is undisputed that Trustee Abbott must have known about alleged salary overpayments to Wilson and lost time compensation to Chief Steward Frank Sutton at the time of the June 2, 1986 trusteeship hearing.
In response to plaintiffs' argument of untimeliness, defendants do not rely upon the lack of knowledge exception to § 2. Rather they insist that the § 2 time bar is inapplicable to charges brought pursuant to § 1(g) relating to the mishandling and misappropriation of union funds. This interpretation, they assert, is consistent with both past practice by International as well as the following language of the constitution: "In no event will any charge be processed which is based on an alleged violation occurring more than one (1) year prior to the filing of such charge except that this time limit shall not apply to any charge alleging a violation of § 1(g) of this Article." Article XVII, § 2 Constitution (emphasis added). Defendants argue that this court should defer to this interpretation by International.
Judicial deference to an international union's reasonable interpretation of its constitution is a longstanding policy of this circuit. Local 334 v. United Association of Journeymen, 669 F.2d 129, 132 (3d Cir. 1982); Lewis v. American Federation of State, County and Municipal Employees, 407 F.2d 1185, 1191-92 (3d Cir.1969).
Other circuits have followed the same principle. In Monzillo v. Biller, 735 F.2d 1456, 1458 (1984), the D.C. Circuit declared:
An interpretation of a union constitution rendered by officials of a labor organization is entitled to considerable deference by a reviewing court and should not be overruled unless the court finds that the interpretation was unreasonable or made in bad faith.
See also Newell v. International Brotherhood of Electrical Workers, 789 F.2d 1186 (5th Cir.1986); Taylor v. Great Lakes Seamen's Union, Local 5000, United Steelworkers of America, 701 F.2d 590 (6th Cir.1983); Busch v. Givens, 627 F.2d 978, 981 (9th Cir.1980).
Plaintiffs contend that "[t]he only reasonable interpretation" of the language contained in Article XVII, § 2 "is that a § 1(g) violation may be prosecuted within sixty days after it becomes known, even if it does not become known for over a year, whereas other violations may be prosecuted only if they become known within a year after they were committed." (Plaintiffs' Brief in Support of Motion for Summary Judgment, p. 41).
Defendants nevertheless insist that International has consistently interpreted § 2 as completely exempting charges relating to § 1(g) violations from any time limitation. Considering the very serious nature of § 1(g) violations as compared to the other violations of § 1,[5] I cannot characterize International's interpretation as being unreasonable. At a minimum, International's argument offers one possible reasonable interpretation of § 2. Moreover, plaintiffs have cited no evidence to bring into genuine dispute defendants' contention that said interpretation is consistent with prior International interpretations. Plaintiffs merely question whether that interpretation is correct. Of course, plaintiffs must do more than raise questions at this stage of the proceedings. See Celotex, supra. Consequently, this court must defer to the reasonable interpretation by International President Jones that the charges filed against plaintiffs were timely.
Next, plaintiffs argue that internal union charges were filed in bad faith and or in retaliation, but have offered no evidence to meet their burden of showing either bad faith or retaliatory purpose. Instead, it appears to be plaintiffs' contention that this court should permit a jury to infer retaliatory purpose solely on the basis of plaintiffs' legal challenge to the trusteeship's imposition and their subsequent unsuccessful opposition to the reelection of incumbent International President Charles Jones. However, bad faith or retaliatory *1332 purpose cannot be inferred solely from the opposition of plaintiffs to the leadership of International.
Finally, plaintiffs challenge the sufficiency of the evidence used to support the disciplinary findings against them. Upon a thorough reading of the transcript of the hearing on internal union charges, it is clear that the evidence introduced at the hearing was sufficient to support the unfavorable verdicts returned against plaintiffs. As stated in Vars v. International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers, 320 F.2d 576, 578 (2d Cir.1963):
The courts are not free to substitute their judgment for that of the trial court or to re-examine the evidence to determine whether it would have arrived at the same conclusion that was reached by the trial body. ... However, implicit in the requirement of a full and fair hearing is the requirement that there be some evidence to support the charges made.... If Section 101(5) is to provide any measure of protection for the individual union member who finds himself besieged by the full power of the International Union, some review is necessary in order to protect such members from obvious abuses. This is especially true in cases such as this where the hearing examiner is not an independent figure divorced from union controversies but is an officer of the International Union.
Accord, Lewis, 407 F.2d at 1195. Since this court may not substitute its judgment for that of the hearing examiner presiding over internal union disciplinary proceedings, the internal union findings must be sustained if they are supported by evidence. Clearly, there was some evidence to support the charges made against Hardy and Wilson. This evidence includes the undisputed fact that the bylaws of the local, adopted February 12, 1985, specified a lower weekly salary for the executive secretary than the salary paid to plaintiff Wilson in 1985 and 1986.
An appropriate order follows.

ORDER
AND NOW, this 29th day of February, 1988, for the reasons stated in the accompanying memorandum, IT IS ORDERED that:
1. Plaintiffs' motion for summary judgment is DENIED;
2. Plaintiffs' motion for summary judgment on internal union charges is DENIED;
3. Plaintiffs' motion for a preliminary injunction on internal union charges is DENIED; and
4. Defendants' motion for summary judgment is GRANTED.
NOTES
[1] While it is clear that the trusteeship has terminated we do not deny plaintiffs' allegations of invalidity with regard to the trusteeship as moot since arguably if the trusteeship was unlawfully imposed plaintiffs could be entitled to some kind of relief.
[2] Prior to September 3, 1986, on which date a majority in favor of continuing the trusteeship was obtained, International held its Consolidated Convention on August 14, 1986. Lodge 802 was able to send delegates since Trustee Abbott had secured a loan from International to the Lodge to cover the per capita tax arrearage. At a meeting conducted by Trustee Abbott the day after the trusteeship's imposition, lodge members nominated Ron Marley and Page Groton to be the sole delegates to the convention. Plaintiffs also attended the convention as delegates. Plaintiffs unsuccessfully challenged Marley and Groton's delegate status by testifying in favor of disqualification before a credentials committee. Both Marley and Groton supported the slate of candidates headed by Charles Jones, the incumbent International President. Plaintiffs backed the opposing slate. Charles Jones and the other persons running on his ticket, including Ron Marley, were elected.
[3] The record discloses that on or about August 7, 1986, International filed Form LM-15 with the United States Department of Labor stating therein three purposes of the trusteeship: (a) to correct corruption or financial malpractice, (b) to assure the performance of collective bargaining agreements or other duties of a bargaining representative, and (c) to restore democratic procedures.
[4] Section 464(c) in pertinent part provides:

In any proceeding pursuant to this section a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing either before the executive board or before such other body as may be provided in accordance with its constitution or bylaws shall be presumed valid for a period of eighteen months from the date of its establishment and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 462 of this title.
[5] Section 1(n), for instance, makes it a chargeable offense to "caus[e] disruption or disturbance at a union meeting or union office ... or appea[r] at any meeting or office in an intoxicated condition."