NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0436n.06

No. 10-3078

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jun 29, 2011*

LEONARD GREEN, Clerk

RICHARD THOMASON,

      Plaintiff,

TIMOTHY EVANS, et al.,

      Plaintiffs-Appellants,

v.

AMALGAMATED LOCAL NO. 863,
et al.,

      Defendants-Appellees.

      ON APPEAL FROM THE UNITED
      STATES DISTRICT COURT FOR THE
      SOUTHERN DISTRICT OF OHIO

_____/

BEFORE:    GUY, CLAY, and McKEAGUE, Circuit Judges.

      **CLAY, Circuit Judge.** Plaintiffs Timothy Evans, Michael Lewis, and Michael Ogle[1] appeal

the grant of summary judgment for Defendant Amalgamated Local No. 863 ("Local Union") and its

parent union, Defendant International Union United Automobile, Aerospace, and Agricultural

Implement Workers of America ("International Union" or "UAW"), on the basis that the district

court erred in denying Plaintiffs' motion for discovery prior to the grant of summary judgment.

_____

      [1]A fourth individual, Richard Thomason, was listed as a Plaintiff in the Complaint, but the
district court dismissed him from the case, and he is not a party to this appeal.

For the reasons set forth below, we **VACATE** the grant of summary judgment for Defendants, and **REMAND** with instructions to permit reasonable discovery consistent with this opinion.

**BACKGROUND**

In 2000, Plaintiffs Timothy Evans, Michael Lewis, and Michael Ogle were employed by Ford Motor Company ("Ford") at a plant in Sharonville, Ohio ("Sharonville Plant"), which was governed by a collective bargaining agreement between Ford and the Local Union ("Ford CBA"). At that time, the Local Union also had jurisdiction over a facility in Batavia, Ohio ("Batavia Plant"), which was owned by ZF Batavia LLC ("ZF"), and operated as a joint enterprise with Ford. The Batavia Plant workers were employed either by Ford and subject to the Ford CBA, or by ZF and subject to a collective bargaining agreement between ZF and the Local Union.

In 2001, Plaintiffs were laid off by Ford, and subsequently became aware of other jobs with Ford outside of the jurisdiction of the Local Union. According to Plaintiffs, Local Union officials encouraged them to take the work, stating that doing so was the best way to maintain their seniority. The officials advised Plaintiffs that they could eventually return to the Sharonville Plant simply by signing a "Return-to-Basic Unit" form, and waiting to be recalled in order of seniority from a "return home list."

In December of 2001, Evans and Lewis began work at a Michigan truck facility, which was under the jurisdiction of UAW Local 900. Similarly, in September of 2002, Ogle began work at a Kentucky truck facility, which was under the jurisdiction of UAW Local 862. It does not appear that Plaintiffs paid dues directly to the Local Union during this time, but rather the new local unions

withdrew union dues from their paychecks. The record does not reflect whether the new local unions remitted any of the dues to the Local Union.

According to Plaintiffs, they never paid an initiation fee to the new local unions, nor did they ever deposit an honorable withdrawal transfer card ("Withdrawal Card"), an item not well defined in the record, with the new local unions. In fact, according to Plaintiffs, the Local Union never issued a Withdrawal Card to Plaintiffs. This fact is corroborated by the president of the Local Union, Phyllis Blust, who explained in an affidavit that it is not the practice of the Local Union to issue such a card to a member who is laid off. Blust also explained that the Local Union does not require individuals from other local unions to deposit a Withdrawal Card or pay an initiation fee to transfer into the Local Union.

In June 2004, Plaintiffs Lewis and Evans returned to attend a Local Union membership meeting. They were introduced as the "boys from Michigan truck," and allege that they participated during the meeting by, among other things, voting on issues presented.

In late 2004, ZF transferred ownership of the Batavia Plant to Ford. Under a Transition Agreement between ZF and Ford, ZF Employees would maintain their seniority, but be employed by Ford. This would give ZF Employees "retroactive seniority" with Ford, and place some of them ahead of existing Ford employees, including Plaintiffs, in terms of seniority. In meetings held during September 2004, ZF Employees voted to approve the Transition Agreement. According to Plaintiffs, Ford Employees, including Plaintiffs, were excluded from attending the meetings or voting on the Transition Agreement.

At some point after the disputed vote, Plaintiffs were each recalled to the Sharonville Plant, and subsequently transferred to the Batavia Plant. But sometime in 2006, Plaintiffs were again laid off by Ford, at which point "Plaintiffs learned that ZF [E]mployees had not been laid off even though they had been Ford employees for a shorter period of time." (Pls.' Br. at 47.)

On November 9, 2006, Plaintiffs filed a complaint against Defendants in the district court, alleging violations of the Labor Management Report and Disclosure Act, 29 U.S.C. § 401 *et seq.* ("LMRDA"), in connection with the vote on the Transition Agreement. The litigation was stayed for nearly two years pending an internal union appeal—details of which are not contained in the record—but once the stay was lifted, Plaintiffs filed an amended complaint on April 10, 2009.

On June 5, 2009, Defendants filed a motion to dismiss, asserting that Plaintiffs were not members of the Local Union at the time of the disputed vote. Three days later, Plaintiffs served Defendants with discovery requests. Defendants did not respond, but instead sought a protective order that would stay discovery. On June 30, 2009, Plaintiffs responded to the motion to dismiss. Both parties asked the district court to consider matters outside of the pleadings.

On July 28, 2009, Plaintiffs filed a motion for discovery pursuant to Rule 56(d), seeking discovery into the issue of membership, among other topics. On January 5, 2010, the district court simultaneously converted Defendants' motion to dismiss into one for summary judgment; denied Plaintiffs' Rule 56(d) motion as futile; granted summary judgment for Defendants on the basis that Plaintiffs were not members of the Local Union at the time of the disputed vote and thus lacked standing under the LMRDA; and denied as moot Defendants' motion for a protective order.

## DISCUSSION

On appeal, Plaintiffs argue that the district court abused its discretion by granting Defendants' motion for summary judgment prior to any discovery. Plaintiffs contend that without a reasonable opportunity for discovery, they were unable to present evidence that would be material to their opposition to Defendants' motion. Defendants respond that the district court did not abuse its discretion; according to Defendants, Plaintiffs' request for discovery was vague, and no genuine issues of material fact remained outstanding that would have required discovery.

Because we find that it was an abuse of discretion, under the circumstances of this case, to enter summary judgment prior to any discovery, we **VACATE** the grant of summary judgment, and **REMAND** with instructions to permit reasonable discovery consistent with this opinion.

Prior to the entry of summary judgment, Plaintiffs requested leave to take discovery pursuant to Rule 56(d), which provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). The district court denied Plaintiffs' request for discovery, and we review for an abuse of discretion. *See CenTra, Inc. v. Estrin*, 538 F.3d 402, 419 (6th Cir. 2008). "An abuse of discretion occurs when the reviewing court is left with the definite and firm conviction that the trial court committed a clear error of judgment." *United States v. Hunt*, 521 F.3d 636, 648 (6th Cir. 2008) (internal quotation marks omitted).

In reviewing the denial of a motion for discovery, we consider a number of factors, including: "(1) when the appellant learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would have changed the ruling below; (3) how long the discovery period had lasted; (4) whether the appellant was dilatory in its discovery efforts; and (5) whether the appellee was responsive to discovery requests." *CenTra*, 538 F.3d at 420 (quoting *Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1196-97 (6th Cir. 1995)).

Having reviewed the record, we are left with the definite and firm conviction that the district court abused its discretion. A straight-forward application of the factors set forth above compels our conclusion. Because the district court permitted no discovery whatsoever, the first and third factors weigh in Plaintiffs' favor. The fourth factor is inapplicable, and the fifth factor weighs in Plaintiffs' favor because Defendants failed to respond to Plaintiffs' discovery requests and instead sought a protective order to stay discovery. Additionally, the second factor, as explained below, weighs in Plaintiffs' favor because Plaintiffs sought evidence that would be germane to the summary judgment motion.

This case presents no compelling reason to depart from the oft-repeated rule in this Circuit that "when the parties have no opportunity for discovery, denying the Rule 56[(d)] motion and ruling on a summary judgment motion is likely to be an abuse of discretion." *Id.* (collecting cases). Although a district court ordinarily does not abuse its discretion in denying a Rule 56(d) request that is "too vague," the district court in this case did not deny the motion on that basis. Instead, the district court reasoned only that "there were no questions of fact which needed to be resolved in

discovery for a decision on Defendants' Motion." This was legal error insofar as an inadequate record prevented appropriate consideration of the motion for summary judgment.

We recognize that case law governing standing under the LMRDA is somewhat sparse. We nonetheless believe that some measure of discovery was necessary in this case to properly define and present the issues to be considered on summary judgment. Given the dearth of case law in this area, we briefly explain why the evidentiary record before the district court was insufficient to permit a grant of summary judgment.

Section 411 of Title 29 of the U.S. Code establishes a "union bill of rights." *Hooks v. Truck Drivers, Chauffeurs & Helpers, Local 100*, 39 F. App'x 309, 312 (6th Cir. 2002). The Section provides in relevant part:

> Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

29 U.S.C. § 411(a)(1). It is well settled that only a "member of a labor organization" has standing to enforce the rights guaranteed by § 411. *See id.* §§ 411, 412; *United Bhd. of Carpenters & Joiners of Am., Dresden Local No. 267 v. Ohio Carpenters Health & Welfare Fund*, 926 F.2d 550, 556 (6th Cir. 1991).

Under the statute, a "member" is defined as "[(1)] any person who has fulfilled the requirements for membership in [a labor] organization, and [(2)] who neither has voluntarily withdrawn from membership nor has been [appropriately] expelled or suspended from membership." 29 U.S.C. § 402(o). In considering an individual's membership status, courts defer to the internal

rules of the union, so long as those rules are reasonable. *See, e.g.*, *Hooks*, 39 F. App'x at 312; *Taylor v. Great Lakes Seamen's Union, Local 5000, United Steelworkers of Am.*, 701 F.2d 590 (6th Cir. 1983) (per curiam).

The first question is whether Plaintiffs have fulfilled the requirements of membership in the Local Union. *See* 29 U.S.C. § 402(o). This question is answered by looking to the internal rules and regulations of the UAW pertaining to membership. Under Article 6, § 2 of the UAW Constitution:

> Any person eligible to become a member of the International Union . . . may apply for membership to the Local Union having jurisdiction over the workplace in which s/he is employed. The applicant must, at the time of the application, be an actual worker in and around the workplace. All applicants for membership in any Local Union of the International Union shall fill out an official application . . . .

(*See* UAW Const. art. 6, § 2.) This section seems to make membership in a local union contingent upon the applicant maintaining a job within the local union's jurisdiction "at the time of the application." Whether another provision of the UAW Constitution would operate differently, or whether there is a "long established, consistently applied policy that continued employment . . . is a condition of retention of union membership," *Dale v. Major League Umpire's Ass'n*, No. 85-2669, 1986 WL 2883, at *4 (E.D. Pa. Mar. 5, 1986), are questions of fact to be discovered, if at all, on remand.

It is true, as the district court noted, that Article 6, § 10 of the UAW Constitution provides that "[n]o member shall be allowed to hold membership in more than one (1) Local Union [] at the same time[.]" But § 10 on its face does not purport to resolve the choice between competing local unions; nor does it suggest that the remedy for a violation is expulsion from one of the competing local unions. More fundamentally, in this case, it is unclear whether § 10 even applies, as discovery

8

is needed to determine whether Plaintiffs ever attained membership in the new local unions, or whether the new local unions regarded Plaintiffs as having attained membership.

The district court recognized that the UAW Constitution provides that a member "shall establish her/his membership in another UAW Local Union by either" paying an initiation fee and dues, or "obtaining an honorable withdrawal transfer card and depositing same immediately in such other UAW Local Union." (UAW Const. art. 17, § 3.) But Plaintiffs did neither, and therefore the question remains of whether the Plaintiffs continued to be members of the Local Union.

On this question, the district court concluded that Plaintiffs became members of the new local unions "when Plaintiffs left the jurisdiction" of Local 863. The district court did not address the initiation fee, and summarily dismissed the Withdrawal Card procedures as a "mere formality," reasoning that "it is not the actual issuance of the card which determines membership." Such a conclusion, however, cannot be upheld on the basis of a plain reading of either UAW Constitution or the official interpretation thereof, as neither addresses whether an individual's membership in a local union automatically terminates upon taking work within the jurisdiction of another local union without actual receipt and delivery of the Withdrawal Card.

In support of its conclusion, the district court relied heavily on the purported interpretation of the UAW Constitution offered by Blust. This was likely error; as Defendants' counsel conceded at oral argument, it is doubtful that Blust, as an official with the Local Union, has the authority to interpret the International Union's Constitution. Discovery is needed on that point. Discovery may also be needed to illuminate the significance of Withdrawal Cards, the Local Union's failure to issue

such cards, and Plaintiffs' resulting inability to accept and deposit such cards in the new local unions, as apparently contemplated by the UAW Constitution.

If Plaintiffs have fulfilled the requirements of membership in the Local Union, the second question is whether Plaintiffs have "voluntarily withdrawn from membership [or] been expelled or suspended from membership after appropriate proceedings." 29 U.S.C. § 402(o). Defendants limit their argument to voluntarily withdrawal. According to Defendants, Plaintiffs voluntarily withdrew by accepting work outside of the jurisdiction; by not paying dues to the Local Union; and by affirmatively paying dues to the new local unions.

It is unclear whether the district court reached this question. Voluntary withdrawal from membership in a local union is expressly governed by Article 6, § 17 of the UAW Constitution. Section 17 states that a member in a local union "may resign or terminate membership only by written communication, signed by the member, to the Financial Secretary of the Local Union." (UAW Const. art. 6, § 17.) Discovery may be necessary to determine whether and to what extent § 17 would operate in this case, and whether any other rules or policies govern voluntarily withdrawal.

If Plaintiffs could voluntarily withdraw from membership by taking actions inconsistent with membership, as Defendants appear to argue, further factual development is necessary prior to the consideration of summary judgment on this basis. For example, relevant inquiry may be necessary into union dues and initiation fees; membership records maintained by the Local Union, new local unions, and/or International Union; Plaintiffs' participation, if any, as members of the new local unions or as members of the Local Union while outside of the jurisdiction; communication between

10

any of various parties and relevant non-parties; and the nature and substance of Plaintiffs' underlying union grievance(s).

With regard to union dues specifically, there is the question of whether Plaintiffs paid dues to any local union during their period of layoff. If they did, there is the question of which local unions were paid dues and whether the local unions receiving the dues subsequently transferred any portion of the dues to another local union. If Plaintiffs did not pay dues to the Local Union while working outside of the jurisdiction, then one must consider whether this had any consequence under the UAW Constitution, particularly where the Constitution distinguishes between *members* and *members in good standing*. (*See, e.g.*, UAW Const. art. 16, § 8 (stating that failure to pay dues will result in loss of "good standing membership").) There is also the question of whether Plaintiffs paid dues to the Local Union upon their recall to the Sharonville Plant. These questions should be explored on remand.

## CONCLUSION

Because the district court, under the circumstances of this case, abused its discretion by entering summary judgment prior to any discovery whatsoever, we **VACATE** the grant of summary judgment, and **REMAND** with instructions to permit reasonable discovery consistent with this opinion.[2]

---

[2]Contrary to the concurrence, the majority expresses no view on the merits of Plaintiffs' claims. We simply note that Plaintiffs' claims raise numerous questions of law and fact that the district court, or the jury, may be asked to resolve. *See Chisom v. Roemer*, 501 U.S. 380, 403 (1991) (stating that the existence of complicated questions of fact "cannot justify a judicially created limitation" on a broadly worded remedial statute). Whether Plaintiffs must show, as the concurrence contends, that the result of the disputed election would have been different is a question that is not before us and on which we do not opine.

**McKEAGUE, Circuit Judge, concurring**. Plaintiffs claim that they were deprived of the right to vote on whether to approve the Ford-ZF Transition Agreement. But they were not the only ones denied this chance to vote—only ZF employees participated, and thus all Ford employees were excluded. While I concur fully in the majority's conclusion that there are factual disputes that should be explored in discovery, I question whether these entire proceedings are ultimately futile.

I find it hard to imagine how Plaintiffs could ever recover if they don't now seek a new vote or to otherwise "undo" the merger. They would presumably have to identify all who would have been eligible if Ford employees had been included; contact this wide-ranging group of people individually; and seek to prove, three years later, how they would have voted. I am not aware of any legal authority, and plaintiff has not cited any, that sanctions such an "after the fact" inquiry as to how a person would have voted, as opposed to conducting a new vote, which plaintiffs expressly decline to seek. Is an affidavit from each putative voter sufficient? Or would cross-examination be required? Are Local 863 and Ford entitled to communicate with each Ford employee who did not vote, to give their perspective and explain the consequences (whatever they may be) of such a now-advisory vote? If, and only if, they overcome these legal and practical hurdles—and presumably many more—and then can prove that the negative votes would have changed the outcome of the Agreement's approval, can they obtain back-wages as they now seek to do. Practically speaking, they cannot meet this burden.